BAERVELDT & HONIG CONSTRUCTION COMPANY, a Missouri Corporation, Respondent, v. LOUIS R. SZOMBATHY and ALICE P. SZOMBATHY, Appellants, No. 44761—289 S. W. (2d) 116.

Division One, March 12, 1956.

Motion for Rehearing Before Court en Banc Overruled, April 9, 1956.

846

[redacted]

2. CONTRACTS: Trial: Erroneous Instruction Not Cured. Plaintiff's erroneous instruction was not cured by defendants' instruction covering the elements omitted from plaintiff's instruction. The two instructions were in conflict.

[redacted]

*Wilbur B. Jones, Sam Elson* and *Norman S. London* for defendants-appellants; *Salkey & Jones* of counsel.

*Meyer, Hoester & Coleman* by *Robert G. J. Hoester* for plaintiff-respondent.

[117] COIL, C.—The Baerveldt & Honig Construction Company, a corporation (plaintiff below), had verdict and judgment for $10,295.72 against defendants (appellants here), Louis R. and Alice P. Szombathy, representing the principal and interest thereon of a balance allegedly due plaintiff for materials and labor furnished by plaintiff in the construction of a building for defendants. Defendants contend that the trial court erred in giving instructions.

Plaintiff, engaged in the construction business, erected a one-story, concrete block building for defendants. Defendants had priorly agreed to, and did, lease that building for ten years to the United States as a post office in Berkeley, St. Louis County, Missouri. The contract or understanding between the parties pursuant to which the building was constructed was oral, but there were written plans and specifications. Construction began in September 1951 and the building was occupied on January 5, 1952.

Plaintiff's petition sought recovery on quantum meruit of a balance due for the reasonable value of the labor and materials performed and furnished which went into the completed building, and prayed that the amount found due be adjudged a mechanic's lien on the building. Defendants' amended answer pleaded, in effect, noncompletion of the building and that the completed building was defective because of cracks in the foundation walls. Defendants averred in their amended answer that these defects arose ''either from defective or insufficient materials or defective workmanship or both.'' The evidence at the trial took a wide range and plaintiff, as will more fully appear, contrary to the averments of its petition, submitted its case to the jury on the theory that it was entitled to recover the amount fixed by the terms of an oral contract between plaintiff and defendants. Defendants adduced evidence, without objection by plaintiff, which, also contrary to the averments of their amended answer, supported a possible finding that the cracks in the foundation walls were due to defective plans for the result of which plaintiff was liable, and submitted their case by an instruction which did not exclude the theory (the only theory

supported by defendants' evidence) that defendants were not liable to plaintiff for the amount it would cost to remedy the defects in the foundation walls resulting from defective plans.

A proper disposition of this appeal does not require a detailed review of much of the evidence contained in a long transcript. We shall, however, indicate enough of the evidence to make clear the trial theories of the parties and the basic disputes between them.

Plaintiff's evidence tended to show that the oral contract as to the cost of the building was this: plaintiff was to receive the cost of all labor plus 10% thereon for taxes and insurance, the cost of all materials furnished either directly or through subcontractors, plus 10% on the total figure (labor and materials) thus arrived at for overhead and profit. Defendants' evidence as to the pertinent details of the cost arrangement was this: plaintiff was to construct the building on a cost-plus-10% basis with a ceiling on the total cost of $25,280.

Plaintiff's evidence further showed that the statement attached to its petition correctly reflected the status of the account between the parties in accordance with plaintiff's version of the oral agreement. That statement indicated that the total cost was $27,881.33 (not including an item of $1,680 for the installation of the heating system which, by agreement, was done by defendant, Louis Szombathy, whose business was heating, ventilating, and sheet metal, and for which defendants were to receive credit against either the total cost, from plaintiff's standpoint, or against the [118] ceiling price, from defendants' standpoint). The statement further showed that defendants had made payments on account in the total sum of $16,814.83, leaving a balance due in the sum of $11,066.50.

Defendants did not substantially dispute that the labor and materials reflected on plaintiff's itemized statement had in fact gone into the building (although they may have questioned the propriety of a few of the charges with which we are not here concerned). Defendants' position was that the building was not completed or properly constructed and that the cost to defendants of completing the building and replacing the defective portions should be offset against any amount which was due from defendants to plaintiff. To support that position, defendants adduced evidence to the effect that they had expended the sum of $235 for waterproofing and painting which work should have been done by plaintiff but which plaintiff had refused to do when requested, and that the concrete foundation walls had cracked due to insufficient reinforcing steel in them and that to replace the east and south foundation walls would cost $6,000 to $6,500.

Other evidentiary details will be discussed in connection with our consideration of instruction 1 which was: "The Court instructs the jury that if you find and believe from the evidence that the work and labor as charged for in the plaintiff's bill of items as shown in evidence, was done and performed by the plaintiff and its employees,

under and pursuant to an oral contract by and between plaintiff and defendants, if you so find, and if you further find that the said contract was a cost plus 10% contract, for a maximum amount of $25,280.00 plus $1,000.00 for any changes in plans, if you so find, and if you further find that at the instance and request and with the consent of the defendants, there were extra items of material and labor furnished by the plaintiff in the amount of $2,167.63, then you will find for the plaintiff in the amount of $25,280.00, adding thereto the reasonable value and worth of any extra items of labor and material, as shown in evidence, not to exceed $2,167.63, and from said total amount you will deduct $18,494.83 as a credit to the defendants, as shown in evidence, and you will then award the plaintiff the net amount with interest at the legal rate of 6% per annum.''

It should be noted that plaintiff, by the foregoing instruction, partially adopted defendants' version of the price contract, i.e., plaintiff hypothesized that a ceiling price of $25,280 was the basic price agreement.

Defendants here contend that the foregoing instruction was erroneous because it omitted the requirement of an essential finding prerequisite to plaintiff's recovery, viz., that the building was completed in a workmanlike manner. Plaintiff contends that such a finding was not essential to plaintiff's recovery under the evidence in the instant case.

Defendants correctly assert that in every contract to perform work there is an implied agreement that the work will be done in a skillful and workmanlike manner. See: 17 C.J.S., Contracts, §. 329, p. 781; Brush v. Miller, Mo. App., 208 S.W. 2d 816, 818[1]; Kennedy v. Bowling, 319 Mo. 401, 417, 4 S.W. 2d 438, 445[9, 10]; John O'Brien Boiler Works Co. v. Sievert, Mo. App., 256 S.W. 555, 557[1-5]. Defendants say, therefore, that the disputed issue was whether the building was completed properly or defectively; and that plaintiff's instruction 1, in effect, directed a verdict for plaintiff without requiring any finding on that issue.

Plaintiff answers by asserting, in effect, that all the evidence showed that the building was constructed in exact accordance with plans and specifications approved by both plaintiff and defendants as well as by the postal authorities; more specifically, that the exact kind and quantity of steel reinforcing called for by the agreed plans was placed in the concrete foundation walls in a workmanlike manner, and that, therefore, there was no issue for the jury as to whether the work was properly done.

It does appear, as plaintiff suggests, that both plaintiff's and defendants' evidence [119] showed that the building was constructed according to plans and specifications which were drawn (with the exception of the plans for the heating installation concededly drawn by

defendant Louis Szombathy) by plaintiff's agent; that those plans were approved, generally at least, by defendants and by the prospective lessee, the United States; that defendants did not offer evidence at the trial to the effect that the building had not been constructed in accordance with those plans; that defendants offered no evidence to the effect that the actual work performed under the plans was not done in a workmanlike manner in the sense that the steel reinforcing rods were improperly placed or that the concrete was improperly poured; and it appeared that the building was in fact occupied by the United States for the purpose for which the building was constructed.

Thus, as we view it, the issues made by the evidence (ignoring the pleadings for the moment) were: 1. whether the building was completed, i.e., whether everything was done that was called for either by the plans or by an agreement between the parties; and, 2. whether the plans under which the building was constructed were defective plans in the respect that they provided for insufficient steel in the foundation walls, and, if so, whether such defective plans resulted in defective foundation walls by reason of the cracks which appeared therein; and the additional connected issue, not submitted, as to whether, in any event, plaintiff was legally liable for the result of the defective plans, i.e., whether plaintiff impliedly agreed that the plans he furnished would result in foundation walls without any shrinkage cracks, and, if so, whether defendants, with actual or constructive knowledge of the amount of reinforcing steel called for by the plans and because of defendant Louis Szombathy's familiarity with construction, waived reliance upon the implied undertaking of plaintiff to furnish plans which would result in foundation walls without shrinkage cracks. See 17 C.J.S., Contracts, § 515b and c, pp. 1107-1109; Kennedy v. Bowling, supra, 4 S.W. 2d 444[8]; Simpson Bros. Corp. v. Merrimac Chemical Co., 248 Mass. 346, 142 N.E. 922; McConnell v. Gordon Const. Co., 105 Wash. 659, 178 P. 823; Sandy Hites Co. v. State Highway Commission, 347 Mo. 954, 963[1], 149 S.W. 2d 828, 833[1]; note in L.R.A. 1915C, p. 671.

If the only error contained in the instruction were its failure to have submitted the issue of whether the building was in fact completed, we could effectively cure it by ordering a conditional remittitur. This, because, as we have noted, defendants' only evidence as to expenditures made by them in completing the building was that they had spent $235 for waterproofing and painting. Consequently, defendants would be entitled to no more than a credit for the amount of that item against the amount of the judgment. There is, however, as we shall demonstrate, a more serious deficiency in the instruction.

It is true, as plaintiff suggests and as we have noted, that defendants did not offer evidence at the trial that the foundation walls were not constructed in accordance with the plans. It is also true that those plans called for a certain amount of reinforcing steel to be placed in

the concrete foundation walls. And defendants did not offer evidence that the prescribed amount of steel of proper quality was not used therein or that plaintiff did not place the steel in, or pour, the foundation walls in a proper, skillful, and workmanlike manner. Defendants' position, so far as concerned any issue made by their evidence, was, and had to be essentially, that the plan itself did not call for enough steel and that the plan itself was, therefore, defective and that the building so constructed was defective by reason of foundation wall cracks resulting from defective plans. Defendants offered expert testimony to the effect that standard practice called for the use of twice as much steel as was called for by the instant plans, and that certain foundation wall cracks that appeared after the instant building was completed were caused by not having enough steel in the foundation to prevent such cracks; which cracks, in the absence of sufficient steel, would appear because of the shrinkage of the concrete; [120] and that the "only way you could get rid of the cracks is by removing the wall and rebuilding", and that it would cost between $6,000 and $6,500 to replace the east and south walls.

(We are not presently concerned with the question of whether defendants' pleading and evidence were sufficient to justify its instruction 3 which permitted the jury to offset against any amount due plaintiff the total cost of replacing the east and south walls. Certainly defendants' evidence did not go so far as to show whether the cracks which did appear and which plaintiff thereafter tuck-pointed were such as to make the foundation defective in the sense of not being structurally sound, or whether the cracks were defects only from the standpoint of appearance. And no instruction submitted the possibly relevant question of whether plaintiff was legally bound to do other than follow the approved plans, even though such plans were drawn by plaintiff's agent.)

Our purpose in reviewing defendants' position and portions of their evidence is only to demonstrate that whatever may be said as to its sufficiency, as an affirmative basis for a particular monetary offset, it may not be said that the effect of defendants' evidence was to concede or remove from controversy the questions of whether the building was completed and whether the completed building was in fact nondefective in any respect for which plaintiff would be legally liable.

And even if defendants were held strictly to the allegations of their amended answer, heretofore noted, viz., that the cracks in the foundation walls were due to defective materials or defective workmanship, or both (there was no pleading that defective plans caused the cracks), and even though defendant offered no evidence to sustain those averments, still (in the absence of affirmative evidence by defendant conceding that nondefective materials were used and conceding that such materials were applied in a workmanlike manner and in the absence of defendants otherwise eliminating those issues), plaintiff would need

to include as essential findings prerequisite to recovery that plaintiff complied with the implied provisions of its contract, viz., that the contract was performed and that the performance thereof was accomplished in a workmanlike manner. Brush v. Miller, supra, 208 S.W. 2d 818[1], 820[7]. This, because plaintiff had the burden to prove those matters as conditions precedent to its right to recover on the theory which it adopted, and defendants were, therefore, entitled to have the jury pass upon the credibility of plaintiff's evidence even though defendants offered no evidence to the contrary. Cluck v. Abe, 328 Mo. 81, 84, 40 S.W. 2d 558, 559[1-3]. And, as we have pointed out heretofore, defendants' evidence was not such as to concede or otherwise eliminate the pleaded issues, and thus make inapplicable the usual rule stated in Cluck v. Abe, supra. Rogers v. Thompson, 364 Mo. 605, 615, 265 S.W. 2d 282, 287[1].

Examining plaintiff's instruction 1 in the light of all the foregoing, it appears that, except for matters not presently pertinent, the instruction required the jury to find only the essentially undisputed fact that the work and labor (materials are not mentioned) reflected by plaintiff's itemized statement "was done and performed by the plaintiff and its employees, under and pursuant to an oral contract by and between plaintiff and defendants." The only finding, however, as to any terms of the mentioned oral contract related to its price feature. Essentially, then, the instruction told the jury to find a specified amount for plaintiff if the stated work and labor was performed. Now, as indicated, plaintiff was not entitled to recover the amount specified, under the issues made either by the pleadings or the evidence, unless the jury also found that the building was fully completed in accordance with the oral agreement of the parties and that such completed building was substantially nondefective (i.e., one which had been constructed in a workmanlike manner), or, if defective, not so in any respect for which plaintiff was legally liable. It may well be that plaintiff's instruction would have sufficiently [121] submitted those issues, from plaintiff's standpoint, by simply requiring the jury to find that the building was completed and, if so, that the completed building was one which had been constructed in a workmanlike manner. But, in any event, plaintiff, by failing to include any language requiring a finding of the mentioned facts, omitted the requirement to find facts necessary to its recovery and the instruction was thereby erroneous. Blackwell v. Union Pac. R. Co., 331 Mo. 34, 42[3, 4], 52 S.W. 2d 814, 816[3, 4]; McDonald v. Kansas City Gas Co., 332 Mo. 356, 364, 59 S.W. 2d 37, 40[6-9]; and see John O'Brien Boiler Works Co. v. Sievert, supra, 256 S. W. 557[1-5].

■ Defendants' instruction 3 may have sufficiently submitted the issues omitted from instruction 1. Instruction 3 directed that if the jury found that "plaintiff failed to construct and complete properly" the building in question and that "it has or will cost the

defendants in order to complete the Post Office building in a good and workmanlike manner'' then such cost should be offset against any amount the jury found was due from defendant, and if the jury found that the cost to defendant was greater than the amount due, then the jury was authorized to return a verdict for defendant. It is established, however, that, ordinarily at least, the omission of an essential fact from a verdict-directing instruction which purports to cover the entire case (from the standpoint of one of the parties) is not cured by an instruction of the other party which requires a finding of the omitted fact. Blackwell v. Union Pac. R. Co., supra, 52 S.W. 2d 816[5]; Cantley v. Missouri-Kansas-Texas R. Co., 353 Mo. 605, 617, 183 S.W. 2d 123, 129[10]; John O'Brien Boiler Works v. Sievert, supra, 256 S.W. 557[6, 7].

Instruction 1 authorized the jury to return a verdict for plaintiff in the amount of $10,295.72 (the exact verdict which the jury returned) without finding the necessary facts heretofore noted. Assuming that defendants' instruction authorized the jury to make findings on the issues omitted from plaintiff's instruction, it then authorized the jury to either return a smaller verdict for plaintiff than that directed by instruction 1 or return a defendants' verdict. The two instructions, 1 and 3, were, therefore, in such conflict that we may not say that by reading them as a single charge, the jury made the essential findings of fact prerequisite to plaintiff's right to recover the amount stated in instruction 1.

It follows that the error was prejudicial to defendants and the case, therefore, must be reversed and remanded for a new trial.

We need not rule defendants' other attack on instruction 1 or their attack on plaintiff's instruction 2. Plaintiff may wish to consider defendants' additional criticisms of those instructions in the event of another trial.

The judgment is reversed and the case remanded for a new trial. *Van Osdol* and *Holman, CC.,* concur.

PER CURIAM:—The foregoing opinion by Coil, C., is adopted as the opinion of the court. All the judges concur.