**HONIG CONSTRUCTION COMPANY, a Missouri Corporation (Plaintiff), Appellant-Respondent,**

v.

**Louis R. SZOMBATHY and Alice P. Szombathy, his wife (Defendants), Respondents-Appellants.**

No. 47844.

Supreme Court of Missouri,

Division No. 1.

March 13, 1961.

Motions for Rehearing or to Transfer to Court en Banc Denied April 10, 1961.

Dubail, Judge & Kilker, Charles R. Judge, St. Louis, Hal B. Coleman, Clayton, for plaintiff-respondent.

Wilbur B. Jones, Carroll J. Donohue, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for (defendants) respondents-appellants, Szombathy.

HOLMAN, Commissioner.

In this action to enforce a mechanic's lien plaintiff sought a judgment in the sum of $11,066.50, the alleged balance due for labor and materials furnished by plaintiff in the construction of a building for Louis R. and Alice P. Szombathy, defendants herein. The defendants filed a counterclaim in which they sought damages in the sum of $27,559. A trial resulted in a verdict for plaintiff on its claim in the amount of $10,929.55, together with interest from April 23, 1952, in the sum of $4,590.39, and a verdict in favor of plaintiff upon defendants' counterclaim. After considering defendants' motion for new trial and motion for judgment in accordance with their motion for directed verdict the court ordered that "if plaintiff will within five days remit from the amount of the jury's verdict the sum of $3,500 together with interest thereon at 6% per annum from April 23, 1952, defendants' motion for a new trial will be overruled; otherwise a new trial will be ordered as to the issue of damages only, on the ground that the verdict is excessive." Plaintiff did not enter the remittitur and all parties have appealed.

This is the second appeal in this case. Upon the prior appeal a judgment for plaintiff was reversed and the cause remanded for a new trial because of error in plaintiff's verdict-directing instruction. Baerveldt & Honig Construction Co. v. Szombathy, 365 Mo. 845, 289 S.W.2d 116.

Defendants owned a lot located on Airport Road in Berkeley, St. Louis County, Missouri. They desired to construct a one-story building thereon which was to be leased to the United States for use as the post office in Berkeley. The negotiations between plaintiff and defendants were carried on by Robert J. Honig on behalf of plaintiff and Louis R. Szombathy on the part of defendants. In the spring of 1951 Louis contacted Mr. Honig and obtained an estimate as to the cost of constructing the building. Honig also assisted Louis in preparing the "Proposal to Lease Quarters"

which defendants submitted to the post office department.

On or about August 3, 1951, an oral contract was entered into between plaintiff and defendants for the construction of the building. There is conflicting testimony in regard to some of the terms of the agreement. Mr. Honig testified that it had been agreed that plaintiff would construct the building in good workmanlike manner and that defendants would pay plaintiff the cost of the labor, plus 10% thereof to cover insurance and taxes, the cost of all materials used, plus 10% of the total cost (labor and materials) for plaintiff's overhead and profit. Mr. Szombathy agreed with the testimony of Mr. Honig as to the terms of the contract with the exception that he stated that plaintiff had guaranteed that the maximum cost would not exceed $25,280. It should also be stated that Mr. Szombathy was engaged in the heating business and it was agreed that he could install the heating equipment in the building. Mr. Honig had estimated the cost of the heating plant at $1,680. Mr. Szombathy testified that plaintiff had agreed that he should be allowed a credit of $1,680 for the installation of the heating plant, thus reducing the maximum or ceiling cost for all items furnished by plaintiff to $23,600.

As soon as plaintiff had been authorized to proceed with the construction it employed Louis Baerveldt, a licensed architect, to prepare the detailed plans for the building. (The architect was apparently employed to prepare plans but not to supervise construction.) The plans show a date of August 30, 1951, but apparently were revised and finally delivered to plaintiff on September 24, 1951. These plans did not show the details for installation of the heating equipment but did show the location of the two gas heaters.

The actual construction of the building began on September 11, 1951. The building has been occupied and used as a post office since January 5, 1952 under a ten-year lease providing for payment of a rental of $3,500 annually. The walls of the building were constructed of concrete blocks although the north and west walls (street sides) were veneered with Bedford stone. The walls rest upon a concrete foundation 12″ thick and 63″ high in which (according to plaintiff's evidence) was placed two one-half inch reinforcement rods. The foundation rests upon a concrete footing 28″ wide and 11″ high in which was also placed two half-inch reinforcement rods. Plaintiff's evidence indicated that the total cost of the building (not including the cost of the heating plant) was $27,881.33. Defendants paid plaintiff a total of $16,814.83. During the trial plaintiff gave a voluntary credit of $135.95 for the architect's fees because of a question as to the lienability of that item. Therefore, according to plaintiff, the balance due upon plaintiff's claim (excluding interest) was $10,930.55. Computed according to defendants' version of the agreement, the balance due upon plaintiff's claim would not have exceeded $6,785.17.

The main controversy at the trial related to the cause and effect of certain cracks that were discovered in the fall of 1952 in the foundation and walls of the building. It was conceded that a number of cracks developed in the east and south walls. In regard thereto defendants pleaded "that the building so constructed was and is defective by reason of foundation wall cracks arising either from defective or insufficient materials or defective workmanship, or both, or from defective plans providing insufficient materials which plans were drawn by plaintiff's agent and represented by plaintiff as sufficient properly to construct and complete the building in a good and workmanlike manner; * * * that defendants are informed and believe and therefore allege the fact to be that the walls and floors as erected are shrinking or settling due to insufficient steel or other causes not known to defendants but within the control of plaintiff as the work of construction commenced and progressed."

Defendants presented evidence tending to prove (1) that the cracks resulted from the failure of the plaintiff to use sufficient reinforcement rods in the foundation, (2) that the rods specified in the plans were only about one-fourth of the quantity that should have been used, (3) that no rods were placed in the foundation under the east wall (this was shown by the testimony of an expert who took industrial X-ray exposures of the foundation and was rebutted by the testimony of an expert offered by plaintiff who used a similar device which he said disclosed the rods in the east foundation), (4) that there is no way to permanently repair the walls so that there would be no cracks therein, (5) that the only way to eliminate the cracks would be to tear out the walls and rebuild them properly, and (6) that the cost of rebuilding the east and south walls while the building is in use would be $27,559. Defendants' counterclaim is based upon the cost of rebuilding those walls.

Mr. Honig testified that when the revised plans were received on September 24, 1951, he immediately sent copies to Mr. Szombathy, together with a letter which read as follows: "Enclosed herewith four (4) sets revised drawings for the above. Will you kindly check and advise if same meets with your approval." He further testified that in about two days said defendant called him and in referring to the drawings stated, "Seemingly, everything is okay, approved." It appears to be plaintiff's primary position that the building was constructed according to the plans prepared by the architect (and approved by defendants) except as thereafter modified by heating plans furnished by defendants, and therefore plaintiff would not be responsible for any failure of the plans to require sufficient reinforcing rods. Plaintiff also presented evidence tending to prove (1) that the walls were constructed in a good and workmanlike manner and were structurally sound; (2) that the cracks were caused by the fact that (in accordance with defendants' heating plans) fifteen heat boxes or ducts were placed in the forms so that when the foundation was poured these boxes were embedded therein, thus reducing the width of the foundation at those points from 12 inches (as provided in the original plans) to approximately 7 inches; (3) that if properly tuckpointed and painted the cracks would be permanently eliminated; and (4) that at trial time the building (exclusive of the land) had a value of $28,000.

The experts on each side generally agreed that the thinning of the foundation resulting from the placing of the heat ducts therein caused or at least accentuated the cracks in the walls. Defendants' heating plans also provided that heat ducts be embedded in the concrete floor. Apparently because that would weaken the floor the city engineer recommended that wire mesh be placed in the concrete and that certain reinforcement piers 18 inches deep be constructed under the floor. These recommendations were followed. There was also evidence to the effect that if sufficient additional reinforcement rods had been placed in the remaining 7 inches of foundation at the points where the heat ducts or register boxes were placed the cracks in the foundation and walls would have been prevented. Other facts in evidence will be detailed in connection with our discussion of the points hereinafter considered.

Defendants contend that the court erred in giving Instruction No. 5 at the request of plaintiff. That instruction reads as follows: "The court instructs the jury that if you find and believe from the evidence that the defects, if any, existing in the building in question, were caused solely and as a direct result of work performed by or subcontracted by the defendants, if you so find, then you are further instructed that under the law, in reaching a verdict, you cannot consider such defects, if any, in computing said verdict." Defendants say that the instruction failed to hypothesize essential facts and failed to require an orderly finding of facts. Their brief states, "It should have required the jury to find

that defendants performed work, what the work was, that their work was not the responsibility of plaintiff, that defendants' work was not properly done, etc.—and, then, a clear finding should have been required that if plaintiff performed its contract in a good and workmanlike manner, it was not to be held for defects caused by defendants."

■ For the reasons hereinafter stated we have concluded that the instruction was prejudicially erroneous. At the outset it will be noted that the instruction does not hypothesize any specific facts. That defect alone, however, would not require a reversal since, under the evidence, the only work it could have referred to was the installation of the heating plant. Plaintiff says that this instruction is directed only to defendants' counterclaim and hypothesizes facts constituting a defense thereto. We do not agree with that view. Plaintiff as a part of its case had the burden of proving that the building was constructed in a good workmanlike manner. We can see no reason why this instruction would not be applicable to the issues submitted in plaintiff's main instruction as well as the submission of defendants' counterclaim.

■ We also note that Instruction No. 5 does not in express terms direct a verdict. However, for all practical purposes it does so. As we have heretofore stated, the only substantial contested issue in the trial related to the cracks which developed in the walls. Therefore, the effect of the instruction was to tell the jury that if the cracks in the walls were caused solely by defendants' work in installing the heating plant then those defects (cracks) should not be considered upon the issue as to whether plaintiff constructed the building in a workmanlike manner as submitted in Instruction No. 1 and the verdict should be for plaintiff on defendants' counterclaim as submitted in Instruction No. 4.

It is our opinion that the instruction was erroneous because a finding that the cracks resulted from the manner in which defend-

ants installed the heating plant would not, as a matter of law, be sufficient to exonerate plaintiff from its obligation to construct the building in a good workmanlike manner. The original plans specified that the foundation should be 12 inches wide. Defendants thereafter directed that the register boxes be placed in the foundation which reduced its width at those points to approximately 7 inches. Mr. Honig testified that he knew that the installation of those boxes would weaken the wall but he went ahead and poured the foundation without using additional reinforcement rods or taking other measures to strengthen the walls at those points. He stated that when he first saw the boxes he called Mr. Szombathy and told him that " 'the way these are being placed in the wall, they are going to reduce the thickness of the wall to about 7 inches or less, and that will cause the wall to fracture at that point.' He [Szombathy] said, 'I am a heating engineer, I ordered them boxes being put in, I told the man over there how high to place them and he's been told to put them in.' I said, 'Of course he may have trouble due to the fact you have reduced the thickness of the wall, won't you please send us a heating drawing?' " Mr. Honig stated further that he discussed the matter with the architect, Mr. Baerveldt, who expressed the opinion that the boxes would weaken the walls but concluded as follows: "Well, if the owner wants it that way, I'm not going to interfere, I don't think it is going to do that much harm, it is going to do some harm."

In considering the question presented it should be borne in mind that plaintiff was an experienced builder and had agreed to construct this building in a good workmanlike manner. Plaintiff is bound by Mr. Honig's testimony that the agreement was upon the basis of cost-plus without any maximum. Plaintiff was not required to obtain defendants' permission or approval in order to purchase any materials reasonably required in the proper construction of the building. While Mr. Szombathy was a heating engineer there is nothing

in the record to indicate that he was skilled in other matters relating to the construction of buildings. Mr. Honig's conversation with him would appear to have been a protest against the installation of the boxes in the foundation and did not relate to methods of strengthening the foundation notwithstanding the installation of the boxes as directed by Mr. Szombathy. Since Mr. Honig knew that the installation of the boxes would cause the walls to crack, and since there is evidence that reasonable methods existed whereby the foundation could have been strengthened (and the cracking prevented) even though the boxes were so installed, we think that under those circumstances the jury reasonably could have found that plaintiff's agreement to construct in workmanlike manner required it to take reasonable additional measures to strengthen the foundation and thus to have prevented the cracking of the walls. Instruction No. 5 would have permitted an exoneration of plaintiff for all responsibility for the cracks in question upon a finding that they resulted from the installation of the boxes in the foundation without any reference to any duty of plaintiff to take the preventative measures herein discussed. It should, in some manner, have required a finding that plaintiff reasonably performed its agreement to construct the building in good workmanlike manner notwithstanding the installation of the boxes in the manner directed by defendants. The situation presented by this instruction is somewhat analogous to sole cause instructions in negligence cases. In considering instructions submitting that the casualty resulted solely from the act of plaintiff or a third party it is held that the instruction must also present (by reference or hypothesization) a factual situation which requires a finding that defendant was not guilty of any negligence which may have directly caused or contributed to the occurrence. See Landau v. St. Louis Public Service Co., Mo.Sup., 322 S.W.2d 132. We are of the opinion, as heretofore indicated, that the instruction in question omitted essential elements and for that reason was prejudicially erroneous.

Since the judgment must be reversed and the cause remanded for a new trial we need not discuss contentions of error in regard to other instructions. Before another trial counsel for plaintiff will have an opportunity to examine those instructions and to make such corrections as may be considered necessary, in view of the attack made thereon by defendants. Also, certain trial errors complained of will not likely recur and need not be discussed herein. There is one point, however, which will no doubt arise upon another trial and upon which we will indicate our views.

■ Defendants contended at the trial, and urge upon this appeal, that the contract for the construction of the building was void because plaintiff as a part thereof agreed to furnish the plans therefor. It is the position of defendants that since neither plaintiff nor Mr. Honig is a registered architect such an agreement would constitute a complete defense to any recovery on the part of plaintiff. This, by reason of the provisions of Section 327.260, RSMo 1949, V.A.M.S., which, as it existed at the time of the agreement between plaintiff and defendants, read as follows: "Any contract entered into for any work in this State contrary to the provisions of this Chapter shall be null and void." This section was repealed and re-enacted in much different form by an act which became effective October 9, 1951, see Laws 1951, pp. 709, 724. Specifically, defendants assert that the court should have sustained their motion for a directed verdict or, in any event, should have submitted that defense as hypothesized in refused instruction D–A offered by them.

The foregoing contentions are without merit. In the first place we do not find any evidence in the transcript to the effect that plaintiff agreed to prepare any plans or render other architectural services. Secondly, the plans used by plaintiff were prepared by a registered architect, paid for by plaintiff, and the cost therefor was charged to defendants under the cost-plus contract. We see nothing in the agreement

or in plaintiff's method of procuring the plans which was contrary to the provisions of Chapter 327, RSMo 1949, V.A.M.S. (which prohibits the practice of architecture by persons not registered under the provisions of said chapter), as same existed on the date here involved. We accordingly rule that the court did not err in overruling defendants' motion for a directed verdict and in refusing to give Instruction D–A.

Since the judgment must be reversed and the cause remanded for a new trial upon all issues we need not discuss the contention of plaintiff, upon its appeal, that the trial court erred in ordering the remittitur heretofore mentioned.

Reversed and remanded.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.