**FREEMAN CONTRACTING COMPANY, a Corporation, Plaintiff-Appellant,**

**v.**

**F. E. LEFFERDINK and Maude C. Lefferdink, Defendants-Respondents.**

**No. 32565.**

St. Louis Court of Appeals.

Missouri.

July 18, 1967.

Motion for Rehearing or to Transfer to Supreme Court denied Sept. 12, 1967.

William R. Dorsey, Clayton, for plaintiff-appellant.

Alvin H. Juergensmeyer, Warrenton, Darryl L. Hicks, Warrenton, for defendants-respondents.

BRADY, Commissioner.

Plaintiff filed suit for a money judgment and for a mechanics' lien for work done under contract on defendants' house. Defendants counterclaimed for damages in the amount of $2,500.00. A jury-waived trial resulted in judgment for the defendants upon plaintiff's cause of action and for defendants on their counterclaim in the amount prayed for. Plaintiff appeals.

The pleadings are of some importance to the issues presented by this appeal. The pertinent parts of the petition are the allegations plaintiff did this work pursuant to a contract between the parties and that, by inclusion of the dates involved, the plaintiff had filed a mechanics' lien containing a true account of the demand due it together with a true description of the property involved within the previous six months. The prayer was for "* * * judgment against the defendants F. E. Lefferdink and Maude C. Lefferdink, his wife for the sum of $1,800 * * *" and for the establishment of a lien in that amount against this property. The defendants' answer was a general denial and by way of special defenses they alleged "* * plaintiff never performed the said contract or raised the foundation of defendants' house or closed the cracks in the walls and foundation of defendants' house, but that when plaintiff left there were additional cracks in the walls * * *." Defendants' counterclaim alleged "plaintiff and defendants entered into an agreement * * *"

for the work called for by the contract as interpreted by defendants and that "* * * defendants agreed to pay plaintiff * * *" the contract price upon completion. In support of their counterclaim defendants alleged that while in the performance of the work called for by the contract the plaintiff's employees "* * * *negligently and carelessly* pushed the walls of the house by means of a jack and brace and by *such negligence* caused additional cracks in the walls of the house. * * * That plaintiff selected the machinery and tools for the job of raising the walls and on failure of the machinery and tools to raise the walls, the plaintiff *negligently* applied pressure on the side of the house with the jack and other equipment, the type and nature of which caused additional cracks in the walls of defendants' residence." (Emphasis supplied.) The prayer of the counterclaim reads: "* * * defendants pray judgment against plaintiff * * *."

The mechanics' lien statement which had been filed previous to the petition involved in this case referred to a contract with "F. E. Lefferdink and Maude C. Lefferdink, his wife" and the account described in the mechanics' lien is for a total of $1,800.00. In response to a direct question by the court plaintiff's counsel stated it was relying entirely upon the contract and was not proceeding upon any theory of quantum meruit.

■ Our review in a non-jury case goes to both the law and the evidence. Robinson Lumber Co. v. Lowrey, Mo.App., 276 S.W. 2d 636; Schabbing v. Seabaugh, Mo.App., 395 S.W.2d 256. We find the facts to be as follows. Mr. Lefferdink requested one of plaintiff's employees to look at defendants' house to determine if something could be done to stop the foundation from settling. The employee inspected the property and told Mr. Lefferdink the foundation could be raised as a result of which the cracks would be closed. Mr. Lefferdink testified that he then went home and looking in the yellow pages of the St. Louis telephone directory found the advertising by the plaintiff which defendants offered into evidence and which was admitted without objection. It is unnecessary to reproduce that advertising here. It is similar to a page which was attached to the contract in that it has a diagram showing how the Freeman System operates. The essentials of that page will be set out later herein. The only thing the advertisement says about cracks is "FOUNDATION & SETTLING CRACKS STOPPED SYSTEMATICALLY."

Plaintiff later sent a contract to defendants' home. The pertinent parts of that contract are: "We propose to install a series of *12* patented pumped piers (THE FREEMAN SYSTEM) as follows: We are to furnish all labor, material, and equipment necessary to complete this work. We are to clean up and leave place in a workmanlike manner. This work to be done for the sum of *Eighteen Hundred ($1,800.00) Dollars* to be paid in full upon completion of said work." The contract also provided for "Location of piers" as follows: "(5) five piers west wall. (1) one pier So. W. corner. (5) five piers north wall. (1) one pier No. E. corner (front). We are to do necessary tuckpointing of cracks in brickwork. Said work is guaranteed for a period of five (5) years from date of completion." The contract also bears the statement "Accepted May 31, 1963"; and the signature "F. E. Lefferdink".

At the time the contract was signed there was stapled to it another sheet of paper which contained a diagram of how the Freeman System works together with a brief explanation of it. At the top the following appears: "WALL CRACKS CORRECTED". There is no other reference to cracks in that material which deals with raising and stabilizing foundations. There was extensive testimony as to just what the Freeman System was. Stating it as simply as is possible, the system requires excavating at the side of the foundation of the house, undercutting the footing, and drilling the required number of 12″ holes down to rock or firm bearing soil. A 2″ pipe with a

bell flange at the bottom is then placed in the hole and it is filled with concrete with the result that a pier is formed with a reinforced pad under the footing. After the concrete has set a hydraulic pump is attached to the pipe and a loose mixture of sand loam and cement is pumped through the pipe underneath the pier forcing the pier upward. The soil mixture later hardens to form a solid footing under the pier. Mr. Lefferdink admitted that the piers stopped the settling of the foundation of the house. The plaintiff's evidence was that after he started the work one of the employees discovered a pier already at one of the locations where plaintiff was to install one and after telling Mr. Lefferdink of this condition and upon no objections being raised by him, only eleven piers were installed. The plaintiff's evidence was that he told Mr. Lefferdink $150.00 was to be deducted from the contract price due to the fact that only eleven piers were installed. Defendants do not deny Mr. Lefferdink was so informed but assert there was no agreement as to that matter.

In view of the disposition made herein as to the counterclaim it is unnecessary to detail the damage to the house which defendants claimed was caused by plaintiff. It can best be summarized by dividing it into several categories. The first of these we will refer to as "crack damage". Some of these cracks appeared in the outside brick walls and some appeared in the interior plastered walls. The confused manner in which the testimony as to these cracks was developed defeats any attempt to separate the cracks into those that occurred in the exterior brick walls as contrasted with those that occurred in the interior plastered walls. However, it is unncessary to do so. It is sufficient to say that when plaintiff had completed its work new cracks had appeared in both places but the outside cracks were tuckpointed by the plaintiff. There were complaints other than cracks. The fireplace was "shoved over, out of line." Defendants also complained that the plaintiff so operated the braces and machinery that the house was raised off of the foundation and the east wall of his basement has been pushed farther east and out of line. He also complained about the front door being out of square and that the windows no longer raised easily because the frames had been twisted.

With respect to the issue of negligence, Mr. Lefferdink admitted he was totally inexperienced in matters such as are here involved and, in fact, had not done any building. He also was asked the following questions and gave the answer shown: (he was speaking of a jack and brace used by plaintiff) "Q. And what you think they should have done was push it in, or down, or what? A. This didn't need no pushing in. He was just trying to help the mudjacks out, I think, was the only reason he put it in there. He couldn't lift it with his mudjack so he took these braces to help it. Q. Let me see if this is a fair statement of what you're telling me. You correct me now if I don't word it right. You're saying the negligence actually is in the angle the jack was used? A. That's true. Q. You say that's negligence because they used a 45 degree instead of a 90 degree? A. If they wanted to push it straight in, they should have had it straight, which Mr. Freeman told his brother-in-law, 'Now put the prop lower down and raise that wall again and take those cycle sections out and let the wall down.' But that never was done. I don't think it was because I'll tell you why—he had to have another hole because you take from here up to there, a certain distance, if you put it straight in there is going to be about a foot and a half or so farther back, but there was no other hole dug. * * * Q. And the negligence again is the angle of the jack, you're saying—that's the sole negligence and carelessness that they had? Is that a fair statement to make? A. That's right." In view of this testimony we will not further dwell upon the other complaints of damage to this house.

As stated earlier defendants were awarded judgment on their counterclaim in the

amount of $2,500.00. Their evidence on the value of the damages was given by two expert witnesses. The first of these, Mr. Jaspering, was asked about the value the defendants' house had with the "cracks" that were in it before plaintiff began work. He fixed that value at $12,000.00. The additional cracks that occurred in the house after plaintiff began work and which defendants contended were the result of plaintiff's work were then itemized to him and he was asked to give his opinion of "the value of this property as of 1963 with all of these cracks considered". His answer was $9,000.00. Other evidence given by this witness which indicated the basis upon which he fixed his estimate of value of defendants' house after plaintiff's work was completed is as follows: "Q. What were the things that you saw over there that indicated $3,000 difference in value? What were the specific things? A. Well, the cracks, all of the cracks. There are tremendous cracks, actually, in the plaster on the inside of the house which would certainly detract a great deal from the sale of the property. * * * Q. Really, what we're talking about is the difference in value of the plaster cracks inside, isn't that correct? A. That's true. Q. You're saying that this plaster crack changed the value of this house $3,000? A. That's what I said. * * * Q. Yes. You considered the cracks only on the inside of the house in arriving at your $9,000 figure? A. Yes."

Other evidence on this issue was given by Mrs. Rapp. She, too, was asked to give her opinion as to the value of this property considering only the "cracks" that were in it prior to plaintiff beginning work. Her testimony was $11,500.00 to $12,000.00. As in the case of the previous witness the list of "cracks" which defendants contend were caused by plaintiff's activity at this property was then read to her and she was asked the following question: "Q. And did you form an opinion as to the value of the property, using 1963 values, as to the value of the property with this last list of cracks which I have read? A. Yes." Her answer was $8,000.00 to $8,500.00. Other evidence given by this witness showing the basis upon which she arrived at the differential in value is as follows. She was asked: "Q. But basically then you subscribe all of the loss of value to the cracks on the inside of the house, is that a correct statement? A. I would say so. Q. And the cracks then on the inside of the house, you say then are worth somewhere between Three and Four Thousand Dollars loss of value, is that correct? A. Yes, sir. Q. And that's entirely with the cracks as they appear on the inside of the house, as listed by Mr. Hicks? A. Yes, sir."

At the close of defendants' evidence plaintiff moved for a dismissal of the counterclaim based upon his contention there had been no proof as to any negligence. Defendants' counsel replied that there had been "ample proof" of negligence. His argument in this regard was that "anyone with common sense" could tell that plaintiff was not proceeding to do this work in a proper fashion. He at no time made any reference to any other theory but continued to insist the "plaintiff was negligent" in the manner in which he did this work. In defendants' brief the same contention is made; i. e., the damage to this house was caused by "plaintiff's negligence."

Reference should also be made to defendants' brief to properly state their contentions with regard to their defense to plaintiff's cause of action; i. e., failure to perform this contract. Therein defendants continue to assert the position they maintained at the trial of this cause, that the real contract was for raising the foundation of defendants' house thus closing the cracks in the walls. At other places in their brief similar language appears to the effect that the contract included closing the cracks in defendants' house.

It is first necessary to dispose of some vital matters pertinent to plaintiff's

petition. We note the contract under which this work was done and which forms the basis for plaintiff's petition was signed by Mr. Lefferdink alone. It is also clear from the transcript that he did not hold the title to this property by himself but as tenants by the entirety with his wife. Plaintiff's lien statement refers to the property as being owned by "F. E. Lefferdink and Maude C. Lefferdink, his wife". Mrs. Lefferdink so testified. With regard to plaintiff's right to enforce a mechanics' lien against this property, plaintiff is charged with constructive knowledge of the state of this title as of the time he entered into the contract. Wilson v. Fower, 236 Mo.App. 532, 155 S.W.2d 502. It is well settled in Missouri that where property is held by husband and wife as tenants by the entirety neither by their own individual act can subject the property to a mechanics' lien. Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Mo., 396 S.W.2d 570 [22]; Robinson Lumber Company v. Lowrey, supra; Mo.Dig., Mechanics' Liens, Mo.Dig., Husband and Wife, It should likewise be stated that our rule is that before a mechanics' lien can be placed on property held by the entireties the evidence must be strong and persuasive that the act allegedly subjecting the land to the lien was the joint act of both of the tenants by the entireties. Wilson v. Fower, supra; Robinson Lumber Co. v. Lowrey, supra. The same reasoning would apply to plaintiff's attempt to secure a money judgment against both Mr. and Mrs. Lefferdink. Mr. Lefferdink, acting alone, may not bind his wife by his sole contract. Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, supra; Austin & Bass Builders, Inc. v. Lewis, Mo., 359 S.W. 2d 711; Mo.Dig., Husband and Wife, 

 In the instant case we need not assess the proof on this issue. The statements in the counterclaim that "defendants" entered into this contract for which "defendants" agreed to pay upon completion and the prayer that "defendants" recover from plaintiff when read in context clearly constitutes an admission Mr. Lefferdink's act in signing this contract was, by his agency, the act of his wife as well. Under such circumstances the plaintiff is not precluded as a matter of law from recovering a money judgment against both defendants and the lien could be impressed upon this property.

 We pass now to the question whether the evidence before us requires this court to reverse the trial court and enter a judgment for plaintiff on its petition. Performance on plaintiff's part was a condition precedent to its recovery under the contract. Defendants contend plaintiff has failed to perform and must be denied recovery on its cause of action for three assigned reasons. One of these is the contention plaintiff cannot recover due to the fact only eleven piers were installed. With respect to this issue we note the general rule that a contract may be modified by changing some provisions and yet stand as to the residue of the original agreement. 17A C.J.S. Contracts § 379. That is what happened in the instant case. Mr. Lefferdink was informed that because an old pier was already in place only eleven of the twelve piers contracted for could be installed and that $150.00 would be deducted from the contract price because of this. Mr. Lefferdink voiced no objections to leaving out this one pier although he denied any agreement as to the deduction. He would be entitled to some deduction in any event. See Cassinelli v. Stacy, 238 Ky. 827, 38 S.W. 2d 980. It is true plaintiff sued for the full amount of the contract but by his own evidence he is not entitled to that sum. Accordingly, we will consider the prayer of his petition as having been amended by his proof to allege the sum due as $1,650.00. Under such a state of the record we hold that failure to install the twelfth pier does not constitute proof of failure of performance so as to preclude recovery on plaintiff's cause of action.

Defendants next contend, and indeed this is the basic dispute between the parties, plaintiff has failed to perform the contract because raising the foundation of defendants' house failed to close the cracks in the walls. Recognizing the contract here involved is silent as to any such promise defendants argue such a provision was "implied" in the contract. Before examining their contentions in this regard it is necessary to determine the extent of this issue. By reference to tuckpointing of cracks in the brickwork the contract makes it clear that with respect to the outside walls it was contemplated that some other cracks might appear in the brickwork as the result of plaintiff's work and these as well as cracks that existed in the outside brickwork when plaintiff began work were to be tuckpointed. There is actually no real dispute as to this matter. Defendants admit this tuckpointing was done. The extent of the issue as to plaintiff's obligations under the contract to close wall cracks is limited under the evidence adduced and the issues tried to the cracks in the interior plastered walls that were already present or that appeared after plaintiff began work. Defendants advance two arguments in support of their contention. First they rely upon the advertisement from the yellow pages of the telephone directory and the piece of paper that was attached to the contract which they introduced into evidence. The paper attached to the contract did say "WALL CRACKS CORRECTED" but the only fair inference from reading the whole of the material printed on that piece of paper is that foundation wall cracks are what is referred to. Secondly, defendants rely upon the copy of the advertisement placed with the yellow pages of the telephone book, a reproduction of which was introduced into evidence without objection. It would seem clear that such evidence cannot change the terms of this contract. In any event, this evidence is of no assistance to defendants. It refers to "FOUNDATION & SETTLING CRACKS STOPPED SYSTEMATIC-ALLY". The undisputed evidence is that the settling of this house has been stopped and, in any event, interior wall cracks are not within the purview of this advertisement.

The item of evidence upon which defendants place their main reliance is the statement one of plaintiff's employees made to Mr. Lefferdink prior to execution of the written contract to the effect these wall cracks would be closed. The parol evidence rule is one of substantive law and not of evidence. Where there is no fraud, duress, accident, mistake, or mental incapacity, and the parties have reduced their agreement to an unambiguous writing, the law presumes the writing contains the entire agreement between the parties and oral testimony may not be received or considered so as to permit substitution of a new and different contract. Bittner v. Crown Shoe Mfg. Co., Mo.App., 340 S.W.2d 142, 1. c. 146–147; Davison v. Rodes, Mo.App., 299 S.W.2d 591, 1. c. 593. In the instant case, as best we can understand defendants' contention, their position is that the contract does not contain the entire agreement in that all of the obligations assumed by the plaintiff are not therein stated. The additional duty to close up the cracks in the walls was omitted. To prove this they offer parol evidence in the form of the conversation between one of plaintiff's employees and Mr. Lefferdink. We need not explore the question of whether plaintiff's employee could make such a promise so as to bind the plaintiff. It is sufficient to state that parol evidence of this nature is admissible only if it does not interfere with the terms of the written contract and does not add to the obligations of the written contract. Bittner v. Crown Shoe Mfg. Co., supra; See also Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941; 26 A.L.R.2d 278—cited at 1. c. 147 of 340 S.W.2d in Bittner. Of course it is obvious the duty to close the interior cracks is one which would materially add to plaintiff's obligations under the written contract. That evidence is therefore not available for that purpose. Bittner v. Crown Shoe Mfg. Co., supra. The situation is somewhat

analogous to that found in Hudler v. Muller, Mo., 55 S.W.2d 419. There a building contract was reduced to writing without showing any agreement on the part of one of the parties to furnish plans and specifications. Evidence tending to prove that the contractor had indeed agreed to furnish plans and specifications and a bond was held inadmissible as varying the terms of the written contract. We hold there was no requirement in the contract that the raising of the foundation would close the interior cracks in the walls of defendants' house and therefore evidence that such cracks were not closed does not constitute a defense based on failure of performance so as to prevent plaintiff's recovery on its cause of action.

 The third argument advanced by defendants in support of their contention plaintiff must fail in its cause of action because it failed to perform the contract is that the work was not done in a workmanlike manner. Absent specific provisions otherwise an agreement to exercise proper skill is implied in a contract to perform work. 17A C.J.S. Contracts § 329. Where a person holds himself out as specially qualified to perform work of a particular character there is an implied warranty the work he undertakes will be accomplished with proper workmanship. Baerveldt & Honig Const. Co. v. Szombathy, 365 Mo. 845, 289 S.W.2d 116. It is to be borne in mind the evidence showed that in addition to the interior plaster cracks the fireplace in this house was "shoved over, out of line", the east wall of the basement was pushed farther east and out of line, and the front door and windows were out of square and twisted so that they no longer properly operated. With respect to the issue as to cracks, we cannot say that from the existence of these cracks alone we can conclude plaintiff used bad workmanship. Neither do we think that when all of the complaints are considered together there is such proof of bad workmanship as to justify this court finding in favor of defendants on plaintiff's petition. What is said later herein with re-

gard to defendants' evidence in support of their counterclaim is at least partly applicable to the defense of bad workmanship. It may well be that some of the damages which defendants contended resulted from plaintiff's work were inherent in the nature of such work. That would be a matter for specific proof by expert witnesses or in some other manner, but in any event we do not think that the workmanship required in an undertaking of this kind is so within the general public knowledge that we would be entitled to hold that the mere existence of such damages constituted proof of bad workmanship or a lack of skill so as to prevent plaintiff's recovery on its cause of action. It follows from what has been above held the defendants have failed to establish the defense of non-performance on plaintiff's part and the judgment in their favor on plaintiff's petition must be reversed.

 However, that does not mean plaintiff is, ipso facto, to receive judgment for the $1,650.00 which it seeks in this action. While defendants' proof is insufficient to cause us to hold there was in fact no performance on plaintiff's part, that same proof is sufficient to raise the issue of the quality of that performance. The defense of recoupment has lost much of its identity under modern practice and is now generally included within the modern statutes as to counterclaims. Nevertheless, it is still available as a purely defensive matter. Brush v. Miller, Mo.App., 208 S.W.2d 816, Therein at l. c. [7] 820, this court held: " * * * Such a defense involves a defendant's common-law right to recoupment, and is very frequently asserted in actions of this character. In its strict and literal sense it is a purely defensive matter growing out of the transaction constituting the plaintiff's cause of action, and applicable only to reduce or satisfy the plaintiff's claim. In other words, it goes only to mitigation or extinguishment of damages, and differing from a counterclaim, permits no affirmative judgment for the defendant. State v. Weatherby, 344 Mo. 848, 129 S.W. 2d 887; Emery v. St. Louis, K. & N. W. Ry.

Co., 77 Mo. 339; Fricke v. W. E. Fuetterer Battery & Supplies Co., 220 Mo.App. 623, 288 S.W. 1000." In that same case we held at l. c. 821 that: " * * * In view of the nature of the defense as one in confession and avoidance, the authorities consequently hold that 'in an action to recover the contract price agreed to be paid for work and materials, defendant cannot show that the work was done in an unworkmanlike manner, unless he has pleaded such defense.' 17 C.J.S., Contacts, § 574b; Kendall v. Vallejo, 1 Cal. 371; Leeds v. Little, 42 Minn. 414, 44 N.W. 309; Lee Bros. & Greer v. Glenn, 112 S.C. 202, 99 S.E. 757; Ives & M'Carty v. Van Epp & Shattuck, 22 Wend., N.Y., 155." We hold that the allegations found in defendants' answer as set out early in this opinion constitute a sufficient pleading of this matter. It follows that, considering the nature of the defense of recoupment, the burden for establishing such a defense was upon the defendants. We hold that by the uncontradicted evidence as to the house being raised off of the foundation, the east wall of the basement being pushed out of line, the fireplace being "shoved over", and the front door and windows being made inoperable, defendants have borne the burden of proof as to the defense of recoupment.

The difficulty is that there is no evidence in this record as to the amount of damage resulting to defendants' house from such items. The only evidence of the loss of value this house incurred as a result of plaintiff's work was that given by defendants' expert witnesses, Mrs. Rapp and Mr. Jaspering. It is obvious from that portion of their testimony set out earlier herein that their opinions were based solely upon the damage resulting from the interior plaster cracks. That issue is now foreclosed as an item of damage for the reason there was no obligation under the contract requiring the plaintiff to close these cracks by raising the foundation and because there was no proof such cracks were not the inevitable result of the activities called for under the contract between the parties. It follows

that there is no evidence appearing in this record from which we can determine the loss of value this house incurred as a result of being raised off of its foundation, the east wall of the basement being pushed out of line, the fireplace being "shoved over", and the front door and windows being made inoperable. Accordingly, we cannot determine from this record the amount of recoupment, if any, to which the defendants are entitled to have "abated or defalked from the plaintiff's claim". Fricke v. W. E. Fuetterer Battery & Supplies Co., 220 Mo.App. 623, 288 S.W. 1000, l. c. 1002. See also 80 C.J.S. Set-Off and Counterclaim § 2. A new trial must be held for that purpose.

The second issue presented for our decision concerns the judgment awarded to defendants on their counterclaim. In this connection we note the defendants' theory as pleaded in their counterclaim was negligence; that was their theory during the trial; that is their theory on appeal. The counterclaim referred to plaintiff "negligently and carelessly" pushing the walls of the house and by "such negligence" causing cracks. At another point in the counterclaim it is alleged the plaintiff "negligently" used some machinery as to damage the house. It was upon this theory the defendants tried this case as shown, for example, by the statements of their counsel when arguing plaintiff's motion to dismiss the counterclaim. He then refused to rely upon any other theory stating there was "ample" proof to support a finding of negligence. However, the trial court, making clear it did not find any evidentiary support for defendants' case based upon negligence, interpreted their action as proceeding upon another theory which in fact defendants never pled nor tried. In their brief defendants have continued to rely upon a theory of negligence.

We cannot agree the defendants plainly stated, unequivocal, and repeatedly relied upon theory is subject to or permits any interpretation. We must take their case

upon the theory defendants pled and tried it. That theory was and, if we are to credit their brief, still is, negligence.

Defendants are precluded from recovery on such a theory as they have failed to bear their burden of proof as to plaintiff's negligence. The Lefferdinks' testimony went mainly to describing the acts of plaintiff's employees while working at the house (what the employees did and how they went about doing it) and the results of those acts; i. e., the condition of the house when plaintiff had finished. Mr. Lefferdink's testimony the brace and jack were negligently used in that they were placed at an improper angle constitutes defendants' entire direct proof of this issue.

■■■■■ The general rule is that a witness may not express an opinion. Harp v. Illinois Cent. R. Co., Mo., 370 S.W.2d 387 [1]. However, an expert witness may do so when qualified as such and when the subject matter is not of such common knowledge as to invade the province of a jury. Harp v. Illinois Cent. R. Co., supra. There was no attempt made to qualify Mr. Lefferdink as an expert and his own testimony as to his lack of experience and special knowledge refutes any contention he was so qualified. But expert testimony was necessary unless we are to hold this case invokes matters of common experience. In such cases under the proper conditions a non-expert witness may be allowed to express his opinion or conclusion. Davis v. Geiger, Mo.App., 212 S.W. 384, 1. c. 387. We think it clear that the negligence stated by Mr. Lefferdink does not fall into that classification. The proper angle for a brace and jack when attempting to raise and stabilize the foundation of a house is clearly a matter requiring special experience and knowledge not possessed by the ordinary layman. Accordingly, Mr. Lefferdink's opinion does not constitute proof of plaintiff's negligence.

What we have stated above also disposes of defendant's contention that evidence of what plaintiff's employees did at the house was such as to eliminate any need for further proof of negligence. Their argument in this regard was expressed by counsel when urging the trial court to deny plaintiff's motion to dismiss the counterclaim; i. e., "anyone with common sense" could see plaintiff was proceeding in a negligent fashion. This is merely another way of arguing there was no need for expert testimony. There are cases where the acts described so bespeak negligence that the trier of the facts may find negligence without further testimony. However as stated above, those cases involve matters so within the common knowledge and experience of men that further evidence of negligence is unnecessary. This case is not one of that nature. It follows the judgment for defendants on their counterclaim must be reversed. We find for the plaintiff on defendants' counterclaim.

■■■ The judgment is reversed and the cause remanded to the trial court with instructions to enter its judgment for plaintiff on defendants' counterclaim and to hold a new trial on plaintiff's petition to ascertain the loss of value this house incurred as a result of damages arising from the items enumerated herein available to the defendants for the purposes of recoupment. This amount to be used to abate or satisfy, as the case may be, the amount of $1,650.00 due plaintiff and plaintiff is entitled to a lien in the amount of whatever sum is due him after defendants' recoupment. Defendants are to pay the costs of this appeal since plaintiff did receive some of the relief he sought by this appeal.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded to the trial court with instructions to enter its judgment for plaintiff on defendants' counterclaim and to hold a new trial on plaintiff's petition to ascertain the loss of value this house incurred as a result of damages arising from

the items enumerated herein available to the defendants for the purposes of recoupment. This amount to be used to abate or satisfy, as the case may be, the amount of $1,650.00 due plaintiff and plaintiff is entitled to a lien in the amount of whatever sum is due him after defendants' recoupment. Defendants are to pay the costs of this appeal since plaintiff did receive some of the relief he sought by this appeal.

ANDERSON, P. J., RUDDY and WOLFE, JJ., concur.