George MENOS, Appellant,

v.

Michael W. HODGES et al., Respondents.

No. 56722.

Supreme Court of Missouri,
Division No. 2.

Sept. 10, 1973.

*Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 8, 1973.*

Heege & Heege, George F. Heege, III, Clayton, for appellant.

Raymond A. Bruntrager, Arthur Litz, St. Louis, Paskal & Edwards, Richard H. Edwards, Clayton, for respondents.

STOCKARD, Commissioner.

Prior to January 1, 1972, plaintiff appealed from an adverse judgment entered in his action in which, among other relief, he sought damages in an amount then vesting appellate jurisdiction in this court.

Respondents have filed a motion to dismiss this appeal because of the failure of appellant's brief to comply fully with Rule 83.05, V.A.M.R. The brief is deficient, but in the lenient exercise of our discretion the motion is overruled.

Plaintiff's petition is in four counts, but there is no point in appellant's brief directed to Count IV and for that reason its substance will not be set forth.

Count I. Appellant alleged that he and Michael W. Hodges were "co-partners and joint venturers" engaged in the business of operating a series of nursing homes, and that while he was attempting to acquire the Manchester Nursing Home in St. Louis County for the partnership, Hodges purchased it and caused title to be vested in him and his wife. Appellant further alleged that Emmanuel Cassimatis had knowledge of the partnership between appellant and Hodges, but he "joined in a conspiracy" with Hodges to deprive appellant, as partner and joint venturer, from possession and enjoyment of the property and the right to participate in the profits. The prayer was that upon the contribution by appellant of his share, the court decree that the property of Manchester Nursing Home, Inc. be held in trust for the use and benefit of the partnership, and that the property be transferred to the partnership and joint venture.

Count II. After incorporating by reference the allegations of Count I, appellant

alleged that Hodges acquired the Manchester Nursing Home property for $153,000, and that if Hodges "had performed his duty as required by law," appellant "could have acquired said property for a price not higher" than $153,000, but as a result of the "unlawful and fraudulent acts" of Hodges, appellant "has been unable to acquire said property and that equivalent property would cost at least" $250,000. The prayer was for $150,000 actual damages and $50,000 punitive damages.

Count III. After incorporating by reference the allegations of Counts I and II, appellant alleged that J. W. Wood Realty Company, a real estate broker, and Weldon S. Snowden, a salesman-employee of the Realty Company, together with Hodges and his wife and Emmanuel Cassimatis conspired with each other to prevent appellant from acquiring the Manchester Nursing Home in that they received an offer from appellant in the amount of $150,000 to purchase it, but they refused and failed to submit the offer to the owners, but Hodges submitted "a greater offer" through J. W. Wood Realty Co. and Weldon S. Snowden to the owners, and by this conspiracy appellant was defrauded of his interest therein as a partner and joint venturer to his damage in the amount of $150,000.

Trial was had before the court without a jury. At the close of the evidence for plaintiff-appellant the court sustained a motion as to each defendant for a "directed verdict," which we shall consider as the entry of a judgment in favor of each defendant.

Appellant assigns as error in his point II that the trial court erred in refusing to admit into evidence the depositions of Mr. and Mrs. Huber, the sellers of the Manchester Nursing Home.

■ In this case tried before the court without a jury we determine the cause *de novo*, weigh the competent evidence introduced upon the factual issues, and reach our own conclusions based on the evidence. Ordinarily we defer to the finding of the trial court where there is conflicting oral testimony, but in this case no evidence was presented by the respondents. In making such *de novo* review this court will not consider any inadmissible evidence heard by the trial court over objection, but we will consider, when presented by an offer of proof, excluded admissible evidence.

■ "Prejudicial error" or "reversible error" in the admission or rejection of evidence is not an issue on an appeal in a case tried before the court. The issue is whether the evidence should have been admitted and considered, or rejected and not considered, and when that issue is determined the next issue is what the judgment of this court should be, based upon a consideration of the competent and admissible evidence. Martin v. Norton, 497 S.W.2d 164 (Mo.1973). Although there is a serious question as to its admissibility, in reaching our conclusion on the merits of this case we have taken into consideration the evidence contained in the depositions.

In his first point appellant asserts that the trial court erred in entering judgment for respondents at the close of appellant's case because (a) appellant "adduced sufficient proof to establish a prima facie case which entitled plaintiff to recover under Count I," and (b) he "adduced sufficient proof to establish a prima facie case which entitled plaintiff to recover under Count III." In appellant's third and remaining point he contends that the trial court erred in entering judgment for Michael Hodges on Count II because he "made a prima facie case and was entitled to recover actual and punitive damages."

Neither of these points presents any issue for appellate review. In each point appellant contends that he made a prima facie case, but in this case, tried before the court without a jury, that is not an issue. We would be justified in affirming the judgment on that basis. However, in the interest of justice, and again in the lenient

exercise of our discretion, and for the further reason that the basic factual issue is easily ascertainable, we shall review the evidence and rule the case on its merits. We shall not, however, set forth the evidence in detail. Instead, we shall set forth the facts as we have determined them to be from our *de novo* review.

In 1961, after some preliminary discussions between themselves, appellant and Michael Hodges purchased the Whiteway Nursing Home at Farmington, Missouri, and caused the title to be placed in a corporation. Hodges received 50% of the corporate shares of stock; appellant received 25% and Mike Fandos received 25%. This business venture was profitable, and the profits were paid to the three persons based on the percentage of their ownership of stock.

Later that year the same three persons arranged for the purchase of a nursing home at Troy, Missouri. A separate corporation was formed, to which title to the nursing home was transferred, and each received one-third of the capital stock, and also one-third of the profits.

In 1953 appellant and Hodges acquired a third nursing home, this one located at Bowling Green, Missouri. A separate corporation was formed to which title was transferred. However, Fandos had no interest in this nursing home or the corporation, and apparently Hodges advanced all the purchase money. The corporate stock was issued to appellant and to Hodges and his wife. Later, the precise time not being shown, a Mr. Knight purchased one-third of the capital stock, which was subsequently sold to a Mrs. Newman.

Another corporation was formed by the name of Sunset Retirement Homes, but it was referred to by appellant as a "management" corporation or a "shell," and he indicated that its purpose was to protect the name, and that the various nursing homes, above referred to, operated under that name as a fictitious name.

Appellant and Hodges agreed to consider the acquisition of a nursing home in the St. Louis area, and a real estate broker by the name of Cecelia Beyer was instructed to look for a suitable nursing home to acquire. Several places were investigated, including the Shamrock Nursing Home. However, Hodges was not interested in the nursing home. It is not entirely clear what the final outcome was as to this home, but appellant did submit an offer to purchase it on behalf of himself. According to appellant the offer to purchase as an individual was made with the approval of Hodges.

This is the background of the business relations of appellant and Hodges pertaining to the acquisition of nursing homes prior to the transaction involving the Manchester Nursing Home, which transaction constitutes the basis for appellant's suit.

On May 24, 1965 appellant saw an advertisement in a newspaper for the sale of the Manchester Nursing Home located in St. Louis County. He called Mrs. Beyer and asked her to contact the agents of the sellers, and according to appellant he attempted to call Hodges but could not reach him. By reason of arrangements made by Mrs. Beyer, appellant and Mrs. Beyer met Weldon Snowden, the agent for the sellers, and inspected the physical properties of the Manchester Nursing Home. Mr. Snowden indicated that the property might be purchased for $150,000. According to appellant, he told Mr. Snowden that he would be willing to pay as much as $165,000. Appellant then submitted an offer to purchase the nursing home for $150,000. The terms of the offer called for a cash payment of $20,000 and the sellers to take a note and deed of trust for $130,000, all being contingent on appellant obtaining "suitable financing." The offer provided that upon acceptance the deed was to be made to "George Menos or his assign." There is some question whether this offer was ever submitted to the Sellers by Mr. Snowden, but Mrs. Beyer testified that the

offer was refused. Later that day Hodges had what may be termed a "heated" conversation with appellant over the telephone. Appellant testified that "He started off wanting to know why I committed him to a contract, why I did this without his permission; and I told him this had been done many times before when I couldn't reach him. When I thought something was pretty good I went ahead; and after discussion in that regard he said why did I commit him to a contract. I said I didn't commit him, he could come in [for] anything he wanted; if he didn't want to come in, he didn't have to." The following day Hodges submitted an offer in his name alone to purchase the Manchester property for $153,000, which was eventually accepted. The offer called for a down payment of $25,000, and Hodges obtained some of that money from Mr. Cassamatis.

In the early part of July 1965, appellant submitted a second offer through Mrs. Beyer for the purchase of the Manchester property in the amount of $165,000. He did not discuss this offer with Hodges. The offer provided that if accepted the deed was to be made to "George Menos and/or his assigns." It is not entirely clear, but apparently at the time Mr. Snowden told Mrs. Beyer to forward to him this second offer of appellant the offer of Hodges had been accepted.

Appellant and Hodges had no written agreement of partnership or joint venture, and no partnership tax returns were ever filed. Also, although appellant testified that in his opinion there was an "ethical agreement" between him and Hodges, he admitted that there was no written or oral agreement that either was not to purchase other nursing homes for themselves as individuals.

The trial court was not requested to and did not enter findings of fact and conclusions of law. Therefore, we do not know the precise basis on which it rendered its judgment. It could have been that it did not believe some of the evidence, or that even though the court believed all of appellant's evidence it concluded that appellant was not entitled to the relief requested. However, regardless of the reason for the judgment of the trial court, based upon our *de novo* review of all the evidence, we conclude as follows:

(a). Appellant and Hodges entered into an arrangement whereby by mutual agreement, the terms varying as to each acquisition, they would acquire nursing homes, each home to be owned and operated by a corporation and the profits, if any, to be distributed between appellant, Hodges, and any other person having an interest therein, according to the ownership of stock in the corporation.

(b). Each nursing home was to be acquired on an individual basis, the respective ownership and participation of appellant and Hodges to be determined at the time of the acquisition.

(c). Each person, appellant and Hodges, was free to enter or not to enter into the arrangement for the new acquisition of a nursing home.

(d). There was no agreement that either could not individually acquire an interest in a nursing home without the other having an interest therein.

■ We are not called upon to determine whether the acquisition of the Manchester Nursing Home by Hodges violated any "ethical agreement," as that term was used by appellant. We do conclude that his acquisition of the Manchester properties under the circumstances did not violate any partnership agreement with appellant, and did not create any legal liability on the part of Hodges. Since Hodges was free to acquire the Manchester property, if he so desired, the acts of J. W. Wood Realty Company, Emmanuel Cassimatis, and Weldon Snowden in assisting Hodges could not have created any cause of action in favor of appellant against them based on conspiracy.

We conclude as the result of our *de novo* review of the evidence, that based on the facts of this case as we find them, the trial court correctly entered judgment for respondents.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

HENLEY, P. J., and FINCH and MORGAN, JJ., concur.