SOUTH SIDE PLUMBING CO., Plaintiff,

v.

Elmer H. TIGGES et al., Defendants.

Oliver J. PELLOM d/b/a Oliver J. Pellom Real Estate Co., Defendant-Plaintiff-Respondent,

v.

Elmer H. TIGGES and Pearl L. Tigges, Defendants-Appellants.

No. 36079.

Missouri Court of Appeals, St. Louis District, Division Three.

July 1, 1975.

Harry J. Nichols, St. Louis, for appellant.

Edward D. Weakley, St. Louis, for respondent.

Joseph J. Becker, John R. Boyce, Clayton, for defendants.

GUNN, Judge.

Defendants-appellants Elmer H. Tigges [1] and Pearl L. Tigges have appealed from a money judgment in favor of plaintiff-respondent Oliver Pellom for construction costs and contractor's fees arising out of the construction of the Tigges' home in St. Louis County and the impression of a mechanics' lien on the Tigges' property for the payment of the money judgment.

The issues which we consider on appeal as framed by the points raised by the Tigges and preserved for appeal are: 1) whether the judgment of the court-tried case is supported by substantial evidence; 2) whether the trial court erroneously permitted the alteration of a written construction contract in violation of the parol evidence rule. We find these issues in favor of the Tigges and reverse the judgment.

This case began with the filing of an equitable mechanics' lien petition by South Side Plumbing Company against the Tigges and Pellom and several other defendants arising out of the construction of the Tigges' home. Answers and cross-bills were filed, including a cross-bill by Pellom against the Tigges. Settlement and disposition has been made of all issues arising out of the original mechanics' lien petition and cross-bills except those between Pellom and the Tigges. Their dispute is now left for our consideration and determination.

Pellom, whose business is residential construction and real estate sales, and the Tigges had been social friends for many years. The first step toward the termination of that friendship was taken when the Tigges requested Pellom to build a new home for them. According to Pellom, he and the Tigges entered into an oral agreement whereby Pellom was to serve as general contractor in the construction of the Tigges' house. For his services as general contractor, Pellom was to be paid the customary fee of 10 percent of the total construction costs. Construction bids were received and architectural plans secured with the original cost of construction estimated to be $40,000. Although the Tigges initially indicated to Pellom that they had $18,000 with which to commence construction, as the bills came due, the Tigges did not have funds available for their payment, and Pellom arranged for a $20,000 loan for the Tigges with a lending institution. Funds from the $20,000 loan were soon exhausted. Due to construction change orders by the Tigges, total construction costs on the house based on bids had increased from the original estimate of $40,000 to $55,280.15. Pellom, once again, arranged for a loan for the Tigges, this time for $34,587.74 with a lending institution. The amount of the loan was placed in escrow. Critical to our determination of this case is the fact that on October 22, 1969, Pellom and the Tigges, along with the lending institution and the escrow agent, signed a construction and disbursing escrow agreement covering the con-

---

1. Mr. Tigges is now deceased.

struction of the Tigges' house. Both the date of the agreement and the agreement itself share equal importance.

Pellom claimed that further change orders by the Tigges boosted the final construction costs from the construction contract cost figure of $55,280.15 to $59,552.28; that, in addition, Pellom was to receive a 10 percent commission on the total construction cost, or $5,955.23. Pellom acknowledged that $1,000 of his fee had been paid out of the escrow agreement leaving a balance due him for his fee of $4,955.23, plus increased construction costs above the construction agreement based on the change work orders. It is important to note that according to the testimony of the contractors and Pellom all of the changes ordered by the Tigges took place before October 22, 1969, the date of the agreement. Over objection of the Tigges' attorney, Pellom presented evidence of various subcontractors and his own testimony that costs of construction due to change work orders of the Tigges had increased the total construction cost of the house above the $55,280.15 as contained in the construction agreement. The testimony as to Pellom's contractor's fee was that at the time of the execution of the construction agreement on October 22 Pellom advised the escrow agent that he "had a 10% fee coming in there", indicating that his 10 percent construction fee was included in the total construction price of $55,280.15. Later in his testimony, Pellom contended that the construction agreement did not reflect his 10 percent fee. The basis of the Tigges' objection to Pellom's testimony and that presented by the subcontractors was that it represented an attempt to vary a written contract by parol evidence in violation of the parol evidence rule. The trial court overruled the Tigges' objection and entered a judgment for Pellom for $10,230.38 with $4,955.23 of the judgment representing the balance due on Pellom's fee and the remainder owing on increased con-

struction costs due to the change work orders.

■ Before reaching the merits of the case, we comment on the argument raised by Pellom that the Tigges have not preserved their points of alleged error in their motion for new trial; that, therefore, we may not consider the Tigges' appeal. We reject Pellom's argument that deficiencies in the Tigges' motion for new trial preclude us from considering the appeal. No motion for new trial is necessary for appellate review of a court-tried case. *Timmerman v. Ankrom,* 487 S.W.2d 567 (Mo.1972); *March v. Gerstenschlager,* 436 S.W.2d 6 (Mo.1969); *Russell v. Russell,* 427 S.W.2d 471 (Mo.1968). As stated by Judge Laurance M. Hyde in Journal of the Missouri Bar, Vol. 26, No. 2, p. 72:

> ". . . [A] court-tried case *is not determined on appeal on allegations of error* as a jury-tried case is. Instead, it is determined *de novo* on the facts and applicable law, with the appellate court having full authority to make its own findings of fact on the evidence that was or should have been considered by the trial court."

Judge Hyde also noted, as an exception, that in the event a motion for a new trial were to be filed (even though not necessary) a constitutional question urged on appeal should be included in the motion to preserve the question on appeal. But that situation is not before us. The issue as to the need for a motion for new trial has been further clarified by the recently adopted Rule 73.01, subd. 2(b), V.A.M.R.[2] It provides that: "Neither a motion for new trial nor a motion to amend the judgment is necessary to preserve any matter for appellate review" in court-tried cases. Despite any deficiencies in the allegations stated in the Tigges' motion for new trial, we shall determine the case on the merits in light of our understanding that a motion for new

2. Adopted March 29, 1974, effective January 1, 1975.

trial is not necessary to preserve matters for review. McIntosh v. Frisinger, 507 S.W.2d 419, 425 (Mo.App.1974). As a motion for new trial need not be made at all, the filing of one which is imperfect should not prejudice the appellant's position on appeal.

■ We find that the controversy centers on the issue of whether the construction agreement of October 22, 1969 contains the complete agreement for the construction of the Tigges' house and whether the terms of that agreement may be varied by parol evidence on Pellom's behalf. The pertinent provisions of the contract as executed by the Tigges, Pellom, the lending institution and the escrow agent provide:

a) That the contractor (Pellom) agreed "to fully construct the improvements . . . according to construction contract, plans and specifications for the contract amount, as shown in Schedule under paragraph 33, with all claims for labor and materials paid in full, free and clear from mechanics and materialmens liens . . . ."

b) The construction contract amount as contained in the Schedule under paragraph 33 was shown to be $55,280.15, less $18,555.24 prepaid.

c) "That no changes in or additions to the plans, specifications and construction contract under which this escrow is established shall be made without the written approval of all parties."

d) "That this agreement . . . shall comprise the entire agreement among the parties hereto. Any oral or written agreement between Owner [Tigges] and Contractor [Pellom] not presented to Escrowee and approved in writing by it, shall be of no force and effect."

e) The Contractor (Pellom) agreed "to furnish Escrowee with a detailed cost breakdown including names of all subcontractors and material suppliers, the amounts of their contracts, the amount of Contractor's anticipated profit and all other items for which payments are to be made by Escrowee and to immediately notify Escrowee of any change in said contract amounts or estimated costs."

f) "Not to permit any changes in or additions to said plans, specifications and construction contract, without written approval of Owner, Mortgagee and Escrowee. . . ."

g) "If at any time during the term of this agreement, Escrowee should determine that the construction contract amount is not sufficient to pay all costs incidental to the performance of the construction contract, the Contractor will, within seven (7) days after demand by Escrowee, deposit with Escrowee such additional funds as are necessary to pay such costs."

h) "To request payment of no portion of his profit until all costs of construction of improvements have been paid in full and the improvements have been accepted by Owner."

i) The owner (Tigges) agreed "to pay, or cause to be paid to Escrowee, all funds shown in Schedule under paragraph 33, all funds required for all extras hereafter authorized, and all funds for payment of all other items required under this agreement."

The only evidence as to any change orders authorized by the Tigges as testified to by Pellom and the subcontractors occurred prior to October 22, 1969, the date of the contract. There is no evidence that the Tigges authorized, in accordance with the terms of the contract, any changes other than those contemplated within the contract and for the contract price. It is the Tigges' position that the construction agreement is a valid contract, containing the entire agreement between the parties; that all prior negotiations and agreements relating to the construction of the house were merged therein; that any changes in accordance with the terms of the contract had to have been in writing signed by the

parties; and that testimony admitted by the trial court as to costs outside the provisions of the contract constituted an alteration of the written contract in violation of the parol evidence rule. The question of whether the trial court erred in admitting testimony is a matter of law on appeal. *Simpson v. Terminal R.R. Ass'n of St Louis,* 357 S.W.2d 65 (Mo.1962). We find that it was error for the court in this instance to have admitted testimony which varied the terms of the construction contract.

■ Under the parol evidence rule, evidence of prior or contemporaneous agreements which varies or contradicts the terms of a written instrument is not admissible absent fraud, accident, or mistake. But the rule is applicable only where the instrument is a complete integration of the parties' agreement and is unambiguous. *Carroll v. Hahn,* 498 S.W.2d 602 (Mo.App.1973); *Freeman Contracting Co. v. Lefferdink,* 419 S.W.2d 266, 274 (Mo.App.1967); *Hardin v. Ray,* 404 S.W.2d 764 (Mo.App.1966); *Bittner v. Crown Shoe Mfg. Co.,* 340 S.W.2d 142 (Mo.App.1960). Where as here the agreement provides that the document plus any additional documents identified thereunder "shall comprise the entire agreement among the parties hereto" it is the intention of the parties on the face of the agreement to create a complete and integrated contract. Parol evidence of a prior oral agreement will not be admitted to modify or contradict the unambiguous terms of a written contract purporting to incorporate the whole agreement between the parties. *Dutcher v. Harker,* 377 S.W.2d 140 (Mo. App.1964). Prior and contemporaneous agreements are merged into the written agreement which operates in discharge and substitution of those agreements when such is, as here, manifestly the parties' intention. *Dill v. Poindexter Tile Co.,* 451 S.W.2d 365, 370 (Mo.App.1970); *Hardin v. Ray, supra.* Testimony concerning a prior or contemporaneous agreement, if consistent with the writing, may supplement a writing incomplete on its face, but should not, in any case, be permitted to vary or contradict the writing. *Modine Mfg. Co. v. Carlock,* 510 S.W.2d 462 (Mo.1974); *Garden Park Homes Corp. v. Martin Marietta Corp.,* 507 S.W.2d 368 (Mo. 1974); *Beuc v. Morrissey,* 463 S.W.2d 851, 853-4 (Mo. banc 1971); *Freeman Contracting Co. v. Lefferdink, supra* at 274-5. The parol evidence in controversy here clearly interferes with the terms of the written contract and adds to its written obligations.

■ Thus, the unambiguous written document stating that its terms incorporated the entire agreement of its parties subject to subsequent written modification (and there were no written modifications) signed by the parties bars testimony as to Pellom's contentions that he should be allowed to prove that the construction contract amount was greater than $55,280.15 because such amount: 1) did not include his 10 percent fee, 2) reflected only estimates and not final bills, and 3) did not reflect extra costs ordered by Tigges. The party offering testimony has the burden of establishing its admissibility. *Liebow v. Jones Store Co.,* 303 S.W.2d 660 (Mo.1957). Pellom did not establish the admissibility of the parol evidence offered here.

■ Even if the parol evidence rule were not applicable here, Pellom, who as plaintiff has the burden of proof, did not bear his burden. The plaintiff must establish his case by substantial evidence of probative value or by inferences reasonably drawn from the evidence. *Farnham v. Boone,* 431 S.W.2d 154 (Mo.1968); *Hancock v. Light,* 435 S.W.2d 695 (Mo.App.1968). Pellom did not. In his first contention, Pellom states that he told the escrow agent at the time of the execution of the agreement that the $55,280.15 did not reflect his 10 percent fee. This is the only evidence given to support his contention. On the other hand, Pellom at another point in his testimony stated that he "had a ten percent

fee *coming in there.*" (emphasis added, referring to the "construction contract amount.") Further, Pellom applied to and received from escrowee $1,000 of his fee. In addition to this being in violation of express terms of the agreement, Pellom's conduct is an admission that he expected to be paid from the escrowee's fund. See *Grissum v. Reesman,* 505 S.W.2d 81 (Mo. 1974). The contract also contains Pellom's covenant that he would furnish escrowee the amount of his anticipated profit if such payments were to be made by the escrowee.

Pellom secondly alleges that the construction contract amount was an estimate and did not reflect final bills. Although Pellom testified that he told the escrow agent that the figures were not final, there was nothing in the agreement nor any addendum to the agreement to that effect. Pellom also covenanted to immediately notify the escrow agent of any change in contract amounts or estimated costs and agreed that no payments would be authorized in excess of estimated cost as represented to escrowee. Pellom had all the estimates for materials and labor by the time the agreement was signed on October 22, 1969 and expected to hold the subcontractors to that work. He testified that if the subcontractors' bids were accepted they were obligated to do the work at the price bid. Pellom presented absolutely no evidence as to the difference between the estimates and final bills in order to ascertain the Tigges' alleged liability nor explain why he did not hold the subcontractors to their estimates except to say that the Tigges authorized the extra work.

Finally, to account for the cost overrun over the construction contract amount, Pellom alleges that the agreed amount did not include the cost of all the changes and extra work ordered by Mr. Tigges. Pellom listed a description of all the changes made by Tigges after construction began but *before* the agreement was signed on October 22, 1969. Pellom offered no explanation why

these costs, having been incorporated into the building prior to contract date, were not reflected in the contract price. Further, when the Tigges' counsel tried to determine precisely the amount of the changes and extra work Pellom replied: "I don't have those figures"; "I can't tell you definitely the amount in dollars and cents"; "I couldn't give it to you until I got my bills." Pellom never brought in his bills. We have no indication of the cost of the extras, separated from the originally estimated cost of the work contracted. Under these circumstances, it must be said that the contractor has failed to make his case. Tigges cannot be held liable for the difference between Pellom's cost figure of over $65,500 and the contract amount of $55,280.15 in the absence of proof.

We review this court-tried case on both the law and the evidence in the record, *de novo*. The Court of Appeals makes its own independent findings of fact but will not set aside a judgment unless it is clearly erroneous, having given due regard to the trial judge's advantage in determining the credibility of witnesses and deferring to the trial court's findings on conflicting evidence. *Menos v. Hodges,* 499 S.W.2d 427 (Mo.1973); *R. L. S. v. J. E. S.,* 522 S.W.2d 5 (Mo.App.1975); *Johnson County Post No. 2513, V. F. W., Inc. v. Jackson,* 519 S.W.2d 335 (Mo.App.1975). In making its *de novo* review, the reviewing court will consider that evidence it deems admissible and will exclude from consideration improperly admitted evidence. *Menos v. Hodges, supra*; *Martin v. Norton,* 497 S.W.2d 164 (Mo.1973). Having excluded from our review all improperly admitted parol evidence, we find that there is no conflict in the record. Where, as here, the only admissible evidence was documentary, the issue of witness credibility does not arise. *In re Estate of Wintermann,* 492 S.W.2d 763 (Mo. 1973); *Delany v. St. Louis Union Trust Co.,* 518 S.W.2d 704 (Mo.App.1974). We only determine the legal effect of the documen-

tary evidence—the construction and disbursing escrow agreement—which, being a matter of law, is reviewable by the Court of Appeals. *Willis v. Robinson,* 291 Mo. 650, 237 S.W. 1030 (1922); *Idalia Realty & Development Co. v. Norman's Southeastern Ry. Co.,* 219 S.W. 923 (Mo.1920); *Hay v. Bankers' Life Co.,* 207 Mo.App. 277, 231 S.W. 1035 (1921). We find that the $55,280.15 construction contract amount stated the whole and complete agreement between the parties and was never modified in any way specified or allowed by the contract.

A final, ancillary matter is the Tigges' claim that the trial court erred in failing to allow them set-offs and damages due to faulty and defective workmanship by Pellom. However, the Tigges made no mention of this claim in their pleadings and did not ask the trial court for relief on this issue. An issue not pleaded, proved nor even alleged in any motion for new trial at trial may not be raised for the first time on appeal. *Starman v. John Wolfe, Inc.,* 490 S.W.2d 377 (Mo.App.1973). We will not review a legal proposition not presented to or expressly decided by the trial court. *Stahlheber v. American Cyanamid Co.,* 451 S.W.2d 48 (Mo.1970); *Ahlgren v. Colvin-Weber Realty & Investment Co., Inc.,* 507 S.W.2d 686 (Mo.App.1974). We therefore decide against the Tigges on this point.

We find that the construction contract embodies the complete agreement of the parties for the costs of construction of the Tigges' house, including Pellom's contractor's fee. The amount of the contract was $55,280.15. The judgment of the trial court awarding Pellom $10,230.38, representing fees owed of $4,955.23 [3] based on total construction costs of $59,552.28, and the balance for additional construction costs, is reversed.

SIMEONE, P. J., and McMILLIAN, J., concur.

---

3. As previously noted, Pellom acknowledged receipt of payment of $1,000 toward his fee.