**CARL O. HOFFMANN CONSTRUCTION CO., INC., Plaintiff-Appellant,**

v.

**SCHOOL DISTRICT OF the CITY OF ST. CHARLES et al., Defendants-Respondents.**

**No. 37500.**

Missouri Court of Appeals, St. Louis District, Division Three.

March 22, 1977.

V. Jack Muehlenkamp, Dellwood, for plaintiff-appellant.

Niedner, Moerschel, Ahlheim & Bodeun, Paul F. Niedner, St. Charles; Claiborne P. Handleman, St. Louis, for defendants-respondents.

GUNN, Judge.

Plaintiff-appellant (Contractor) brought suit on a school addition construction contract for money allegedly due by reason of change orders issued by defendants, St. Charles School District (School District) and the project architect, Lorenz, Sorkin & Matthews (Architect). The trial court dismissed the Contractor's second amended petition for failure to state a cause of action. The Contractor has appealed; we affirm.

The facts are deduced from the Contractor's second amended petition. According to the petition, in September, 1971 the Contractor and the School District entered into a written contract for the construction of an addition to the Jefferson Junior High School in St. Charles.[1] The contract price was set at $884,955. On January 10, 1972, pursuant to instructions from the Architect, additional work on the project was commenced by the Contractor. After the additional work was completed, on January 31, 1972 a change order was executed by the School District authorizing the alternate work at an additional cost of $298,436.00. Again, on March 10, 1972 pursuant to informal authorization from the Architect and School District alternate work on the project having a cost of $1,629.84 was commenced and completed before a written

1. Section 432.070 RSMo.1969 requires contracts entered into by school districts to be in writing.

change order authorization from the School District was received by the Contractor on April 5, 1972. The original contract price and costs for the two written change orders for alternate work totaled $1,185,020.84. The School District has either paid or tendered for payment the sum of $1,185,020.84.

The Contractor's petition further alleges that subsequent to the two instances involving written change orders, the Architect by letter ordered extra earth excavation work for an additional amount of $70,368.45. The Contractor does not allege in his petition that the work was authorized by the School District. The Contractor also alleges that the Architect ordered (apparently by oral instruction) the Contractor to regrade certain areas at the construction site on a time and material basis for a cost totaling $4,913.11. Again, there is no suggestion in the petition (or elsewhere) that the regrading work was authorized by the School District.

Finally, the Contractor in its petition alleges that, relying upon the construction contract and the authority of the Architect, it performed the excavation work and regrading work in accordance with directions from the Architect; that if the Architect exceeded its authority or acted outside its jurisdiction in directing the extra work to be done the Architect should be liable for the cost totaling $75,281.56.[2]

The Contractor prayed for damages for $75,281.56 against the School District and Architect for the extra excavation work and regrading and for an additional $49,080.20 balance due on the basic construction contract including costs for the written change orders. The School District has in fact tendered the $49,080.20 to the Contractor and has not refused to pay that amount. Thus, there is no controversy over the initial $884,953.00 contract price or the written change order work of $298,436.00 and $1,629.84, which totals $1,185,020.84. The

School District has either paid or offered to pay the foregoing amounts. The only controversy centers on the $75,281.56 claimed for the extra excavation and regrading work allegedly ordered by the Architect without written authorization from the School District.

■ The trial court sustained the School District's and Architect's motions to dismiss the Contractor's petition for failure to state a cause of action. On this appeal from the dismissal of the Contractor's petition we are required to consider the sufficiency of the petition giving the averments a liberal construction. *Dix v. Motor Market, Inc.,* 540 S.W.2d 927 (Mo.App.1976). Even with such monition to guide us, we conclude that the trial court did not err in dismissing the Contractor's petition.

■ The Contractor's first point on appeal concerns Count I of its petition relating to the balance due of $49,080.20 on the basic construction contract plus the additional work performed pursuant to written change orders approved by the School District. The Contractor in its Points Relied On asserts that:

"Count I Sets Out a Cause of Action for the Balance Due on the Contract Price Originally Agreed to by the Parties Without Regard to the Additional Work Done by Stating That Such a Tender, When an Amount Greatly in Excess Is Claimed to Be Due, Would Constitute a Waiver by Appellant [Contractor] of Any Additional Amount Under the Said Contract."

We first observe that this point is a mere abstract statement destitute of meaning and fails to present any justiciable issue. This point fails to comport with Rule 84.04 and is dismissed. *Lee v. Rolla Speedway, Inc.,* 539 S.W.2d 627 (Mo.App.1976). We also note that the School District has at all

---

2.  The Contractor's petition recites:
    "  .   .   .   That if in fact defendants Lorenz, Sorkin and Matthews [Architect] acted outside their jurisdiction and authority in directing plaintiff [Contractor] to proceed with the work set out in Count II [the excavation

work] and Count III [the regrading work], plaintiff by relying thereon has been damaged in the sum of $70,368.45 for the work as set out in Count II and for the sum of $4,913.11 as set out in Count III."

times tendered and has remained ready to make payment of the $49,080.20, so our ruling is not prejudicial to the Contractor.

■ The next points raised by the Contractor deal with the Architect's actions and specifically relate to the $75,281.56 allegedly due for the extra excavation and regrading work ordered by the Architect. Counts II and III of the Contractor's petition state that[*] the Architect orally instructed the Contractor to do the extra excavation and regrading work, but the prayer for damages on these two counts is solely against the School District. There is no allegation in Counts II or III that such extra work was ever authorized by the School District, either verbally or by written change order as required by the construction contract.[3] Counts II and III recite that the Architect met with the Contractor and orally authorized the extra work to be done. The two Counts are barren of any reference to the School District regarding the extra work except for the prayer for judgment.

The Contractor seems to infer subtly that the two prior change order authorizations established some pattern of written approval for change orders after the work had been completed; that the Architect's oral instruction somehow bound the School District. If such were the case, it was not alleged in the petition. Nowhere in the petition is reliance on prior conduct alleged nor is there any allegation that the course of conduct constituted a waiver of the contract provisions requiring written authorization for change orders. In the first two change orders, there was allegation and

documentary proof that the School District knew of and informally authorized the first two items of additional work before the work was done. But Counts II and III neither allege nor suggest that proof would be offered to establish that the School District authorized or had any knowledge of the changes upon which recovery is sought.[4] The allegations of Counts II and III utterly fail to state any cause of action against the School District. As the allegations of Counts II and III are insufficient to support a theory of recovery outside the terms of the construction contract, the Contractor must rely on the terms of the contract, which clearly provide that change order modifications are to be in writing. The contract is clear and unambiguous and the parties are bound by the terms thereof. *South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583 (Mo.App.1975).

■■ Count IV of the Contractor's petition is aimed at the Architect alone; but this Count, too, is misdirected. Count IV alleges that the Contractor relied on the Architect's authority regarding the change orders and that if the Architect acted outside its authority it should be liable. The written construction contract specifically negates any such authority. Without a specific written instrument from the School District, the authority of the Architect to issue change orders was interdicted by the contract documents. And the Contractor's petition makes no allegation that there was any such written instruction from the School District modifying the Architect's authority.[5] The Contractor was bound to

3. The construction contract as a part of the petition specifically provides that any change order must be a written order signed by the School District and the Architect. Paragraph 12.1.2 of the construction contract provides: "A Change Order is a written order to the Contractor signed by the Owner and the Architect, issued after the execution of the Contract, authorizing a Change in the Work or an adjustment, in the Contract Sum or the Contract Time. Alternatively, the Change Order may be signed by the Architect alone provided he had written authority from the Owner for such procedure and that a copy of such written authority is furnished to the Contractor upon request. A Change Order

may also be signed by the Contractor if he agrees to the adjustment in the Contract Sum or the Contract Time. The Contract Sum and the Contract Time may be changed only by Change Order."

4. In a letter, attached to the petition, from the Architect to the Contractor there is a vague reference to certain excavation work, and an indication that a carbon copy of the letter was sent to a Dr. Colaw—whoever he might be.

5. Paragraph 2.2.2 of the construction contract provides:
" . . . The Architect will have authority to act on behalf of the Owner [School Dis-

know of the Architect's absence of authority to issue change orders without written authorization from the School District. *Dickinson v. Bankers Life & Casualty Co.,* 283 S.W.2d 658 (Mo.App.1955). The written contractual provisions firmly ligate the Contractor to the construction contract. The contract must be enforced according to its terms. *Willman v. Beheler,* 499 S.W.2d 770 (Mo.1973); *South Side Plumbing Co. v. Tigges,* supra.

The Contractor's second amended petition fails to negate the specific contract terms and does not state a cause of action. The dismissal of the Contractor's second amended petition is affirmed.

KELLY, P. J., and JOHN L. ANDERSON, Special Judge, concur.

trict] to the extent provided in the Contract Document, unless otherwise modified by written instrument which will be shown to the Contractor. . . . "

Paragraph 2.2.17 of the construction contract reads:

"The duties, responsibilities and limitations of authority of the Architect as the Owner's representative during construction as set forth in Articles 1 and 14 inclusive of these General Conditions will not be modified or extended without written consent of the Owner, the Contractor and the Architect."