**TRAILSIDE CAMPERS INN, INC., a Kansas Corporation, Plaintiff-Respondent,**

v.

**PACIFIC MINERAL SPRINGS RESORT, INC., a Missouri Corporation, Respondent-Appellant.**

**No. 45380.**

Missouri Court of Appeals, Eastern District, Division Four.

June 14, 1983.

**696**

John B. Berkemeyer, Herman, for respondent-appellant.

E.A. Stierberger, Union, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from a judgment against it of $14,000 in a court-tried case and a judgment against it on its counterclaim. Plaintiff sought return of $14,000 earnest money and rent paid pursuant to a lease-purchase agreement and defendant by counterclaim sought $21,000 for rent due and owing.

Plaintiff was a developer of commercial campgrounds. It became interested in some Franklin County property owned by defendant near Six Flags Over Mid-America. An oral agreement for a lease with option to buy was made on September 25, 1970. On October 8, 1970, this agreement was reduced to writing. The agreement provided for rental by plaintiff of the premises for five years at $7000 yearly rental with an option in the lessee to extend the tenancy on a yearly basis for up to 10 additional years at the same rental. During the ten-year period, lessee had an option to buy the land for $100,000. The agreement contained the following paragraph 11:

"This agreement is totally contingent upon Trailside's securing, as a condition of constructing and operating a commercial campground on the premises, all necessary federal, state, county, city, local and other requirements including satisfactory zoning, building permits, operating licenses, and sewage disposal facility approval. Should Trailside be unable to secure these approvals, permits or licenses prior to closing the $500 paid upon execution of this agreement shall be returned to Trailside without interest."

The agreement provided that rental would be paid as follows:

"Five Hundred Dollars ($500) shall be paid upon execution of this agreement and Thirteen Thousand Five Hundred Dollars ($13,500) constituting the balance of the first year's rental and rent for the fifth year shall be paid at closing subject to the provisions hereof. The rental for the second, third and fourth year in the amount of Seven Thousand Dollars ($7000) per year shall be due and payable

upon the anniversary date of the closing of this transaction."

Rental for each year of the option term was due "on or before the anniversary date of the closing of this agreement." The agreement also provided for deposit of defendant's deed to the property in escrow "at the time of closing" to be returned to defendant if the agreement "is terminated for any reason other than the exercise by Trailside of its option to purchase...." The parties agreed that a memorandum of the agreement could be placed of record at lessee's option. Certain liens against the property totalling $12,000, held by third parties, were to be released "at the time of closing ..." and the releases recorded "simultaneously with the closing of this agreement." Lessor agreed to subordinate its rights of ownership in the premises and improvements to mortgages on the property within certain percentage (70%) limits of the fair market value of the improvements and a $150,000 dollar limitation. The 70% loan funds advanced by lessee's bank and the 30% equity capital of lessee was to be placed in a bank and all checks in payment of construction were to be countersigned by an officer of lessor.

On January 25, 1970, an addendum to the agreement was executed by the parties making the term of the lease 25 years, making the rental for the last ten years $12,000, and expressly providing no option to buy during the last ten years.

On November 24, 1970 lessee received conditional approval of its preliminary plat from the Franklin County Planning and Zoning Commission.

On February 9 and 10, 1970, the parties engaged in a series of activities. (1) Plaintiff paid defendant $13,500; (2) the liens on the property were paid off and releases obtained;[1] (3) defendant placed its deed in escrow; (4) defendant executed a subordination agreement; (5) the parties executed a Memorandum of Lease. This latter document which was filed for record on February 17, 1971, stated:

"This Memorandum of Lease is entered into on this 10th day of February, 1971, by and between Trailside Campers' Inn, Inc., as lessee, and Pacific Mineral Spring Resort, Inc., as lessor, and constitutes an acknowledgment by the parties hereto that said parties did execute a lease on October 8, 1970, with respect to the premises legally described as follows: [legal description omitted] and further executed an addendum to such lease on the 25th day of January, 1971.

It is by the parties further acknowledged that the term of such lease is 25 years, with option to purchase during the 6th through the 15th year, during which term the lessee is required to pay rental to the lessor."

On March 23, 1971, Franklin County disapproved the final plat of lessee because of, among other reasons, excessive grades. In its rejection the County stated that the final plat differed markedly from the preliminary plat for which tentative approval had been issued. Following some investigation by lessee of the feasibility of grading to meet the County's requirements, plaintiff, on October 28, 1971, made demand for refund of its $14,000 pursuant to the provisions of the lease agreement. Defendant refused and this suit followed.

The parties offered conflicting evidence at trial of oral statements made at the time of closing. These dealt with who sought the closing prior to receipt of the permits and the professed reason why such closing was desired at that time by the other party. Plaintiff offered testimony that defendant orally assured plaintiff that defendant would refund the money if the permits were not later received and that plaintiff was protected by paragraph 11 of the lease. Defendant's evidence disputed such statements. We, of course, are bound by the trial court's resolution of this oral testimony dispute, to the degree it is relevant. In this case it is not.

Plaintiff argues in support of the trial court judgment that the parties never "closed" the transaction. This argument is

---

1. Whether the releases were recorded was not developed in the trial.

based upon the conclusion that the Lease Purchase Agreement was contingent upon obtaining proper permits and that failure to obtain such permits made the premises unsuitable for the contemplated use. From this, and the oral "agreements" on February 9 and 10, it is reasoned that no "closing" occurred. These are the grounds upon which the trial court rested its decision. We disagree.

■ We are not dealing here with the continuation of the contract after rejection of the final construction plat by the County. We are dealing with the question of the circumstances under which plaintiff was entitled to a refund of money paid by it. The contract provides for a refund upon rejection of the permits "prior to closing." That is the only time frame within which refund is required under the contract. The clear import of paragraph 11 is that until it elected to close, plaintiff was entitled to a refund if permits were denied. After closing, the agreement could be terminated upon refusal of permits but no refund was mandated. It must be recognized that closing required not only payment by plaintiff, but actions by defendant substantially impinging its ownership rights in the property, i.e.: subordination to a mortgage and deposit of its deed in escrow subject to plaintiff's control.[2] The earnest money deposit and initial rent payment served as consideration for these impingments on defendant's title.

■ Nor are we able to conclude that what the parties did on February 10 was other than a "closing" of the contract. The agreement for lease provided a series of actions to occur on "closing." Each of these actions occurred on February 9 or 10. No action required to occur on "closing" did not occur. The agreement provided that subsequent requirements of the lease such as payment of rent, exercise of yearly options to renew, and the period of the option to purchase be determined from the initial closing date. The rights of the parties under the agreement were to be determined

by the "closing" date. The date of closing was of critical importance in determining the obligations of the parties throughout the life of the agreement. February 10 was the date the parties completed the activities called for at closing and we find that to be the date the agreement was closed.

Plaintiff points to the various alleged oral agreements on February 9 and 10 as indicating a modification of the agreement by the parties. Such a contention flies in the face of the parol evidence rule. That rule was stated in *Davison v. Rodes,* 299 S.W.2d 591 (Mo.App.1956) [2], as follows:

"Where parties have reduced their agreement to an unambiguous writing, the courts, through application of the parol evidence rule, have quite uniformly held that in the absence of fraud, duress, mistake or mental incapacity, oral testimony may not be received or considered, thereby substituting a new and different contract. This rule is one of substantive law and not a rule of evidence." *See also State Bank of Fisk v. Omega Electronics, Inc.,* 634 S.W.2d 234 (Mo.App.1982) [1–3]; *South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583 (Mo.App.1975) [3–7].

■ Here the parties prepared a written agreement and a written addendum. On the date of closing they executed a memorandum of lease specifically stating that their agreement consisted of the written agreement and the written addendum. No oral agreements or modifications were recognized therein. The memorandum was acknowledged and was prepared for recording as notice to the world at large of the documents comprising the entire agreement of the parties. Any oral agreements testified to were prior to or contemporaneous with this memorandum of lease. As such they may not be considered in determining the agreement of the parties. There were no allegations or proof of fraud, duress, mistake or mental incapacity to defeat application of the parol evidence rule. The only possible ambiguity in paragraph 11 is

2. At the time of trial in 1981, plaintiff had not released defendant's deed from escrow nor released the subordination agreement.

whether closing prior to receiving the permits prevents subsequent termination if permits are not ultimately received or only restricts the right to a refund. The oral testimony was directed to a question about which no ambiguity existed—the right to refund after closing. When plaintiff closed without the required permits, the money it paid to defendant, both at that time and previously, became defendant's and nothing in the agreement between the parties required it to be refunded.

Defendant seeks to have us reverse the trial court judgment denying defendant's counterclaim and enter judgment for $21,-000 for rent due under the lease. This is premised on the supposition that paragraph 11 was totally enervated by the closing. We do not so interpret that paragraph. As pointed out above, we find that paragraph vitiates the right to refund after closing. But it would allow termination of the lease after that time upon failure to obtain the required permits. The contingency for continuation of the agreement was not eliminated by the closing. Defendant does not advance arguments to support a contention that no termination occurred. We could possibly construct a scenario in support of such a contention but the evidence does not mandate such a result and we decline to create a theory not advanced by defendant.

Judgment on defendant's counterclaim affirmed. Judgment on plaintiff's claim reversed.

PUDLOWSKI, P.J., and KELLY, J., concur.